# STATE OF MICHIGAN

# COURT OF APPEALS

---

MARY ILENE MCROBERTS,

        Plaintiff-Appellant,

v

KYLE ANDREW FERGUSON,

        Defendant-Appellee.

FOR PUBLICATION
November 28, 2017
9:05 a.m.

No. 337665
Midland Circuit Court
LC No. 13-009563-DS

---

Before: O'CONNELL, P.J., and MURPHY and K. F. KELLY, JJ.

MURPHY, J.

In this custody dispute, plaintiff appeals by right the trial court's opinion and order granting defendant's motion for sole legal and physical custody of the parties' minor child. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The parties were never married and their child was born in March 2011. Sometime later that year, defendant joined the United States Navy. It appears that there was little to no communication between the parties until plaintiff sought child support in April 2013. Defendant then sought to revoke paternity and requested DNA testing, which later established defendant's paternity by a high probability. In December 2013, the parties were awarded joint legal custody and plaintiff was awarded sole physical custody. Defendant was ordered to pay monthly child support.

Since that time, defendant sought and was awarded an increasing amount of parenting time with the child. A reoccurring issue, however, was plaintiff's repeated violations of the court's visitation orders. Specifically, plaintiff denied in-person visitations and "Skype" visits between the child and defendant. Pursuant to a stipulated order entered in January 2016, the parties resolved various issues that had been brought to the court's attention. Specifically, it was established that the child would only refer to defendant "as father, dad, [or] daddy," as the child had been referring to plaintiff's boyfriend in that manner. Further, the court ordered that defendant would receive "make-up parenting time" with the child in California, which is where he was stationed. Shortly after the stipulated order was entered, however, defendant filed a show-cause petition alleging that his current wife had flown "into Detroit to pick[]up the minor child but plaintiff failed to show at the airport." Following a March 2016 hearing, the trial court found plaintiff "in contempt of court for willful violation of the visitation order" and cautioned

-1-

that further violations would result in "30 days incarceration" and the child being placed in defendant's custody. The court also ordered that defendant would select a counselor in Michigan for the child and placed the burden on plaintiff to object to the selection.

In May 2016, defendant filed another show-cause petition, alleging in part that plaintiff "continues to support the minor child addressing Defendant as 'Kyle' and her boyfriend as 'daddy[.]'" Defendant also alleged that plaintiff had failed to schedule an appointment for the child with the selected counselor. After a June 2016 hearing, the court found plaintiff in contempt of court. The court imposed a suspended 10-day sentence, conditioned on plaintiff's compliance with court orders. The court also ordered that the child would be "picked up" by defendant's wife and accompanied to San Diego, California, for summer parenting time with defendant.

The child returned to Michigan and plaintiff's custody to begin school in the fall of 2016. In December 2016, defendant filed a show-cause petition alleging that only 17 out of a possible 34 Skype visits had occurred since the child had returned to Michigan. Defendant also averred that plaintiff had failed to arrange counseling for the child. At the show-cause hearing, plaintiff did not dispute those allegations. Other concerning matters included the child's numerous absences and "tardies" incurred for the 2016 school year, and that the child had arrived in California the previous summer with untreated cavities. The trial court found plaintiff to be in contempt of court with regard to the Skype visits and the lack of counseling. The court reasoned that "each little thing on its own is not huge; but it is the conglomeration of all of those things over time together that makes it contempt of court." The court sentenced plaintiff to 30 days in jail and awarded "temporary custody" to defendant.

In January 2017, defendant filed a supplemental petition requesting sole legal and physical custody. A custody hearing was held on February 6, 2017. Defendant and his wife testified that the child was adjusting well to Suffolk, Virginia, which is where defendant was currently stationed. They provided positive academic reports, specifically that the child's recognition of "sight words" had increased significantly. They also indicated that they had arranged for a doctor, counselor, and dentist for the child and that they were in the process of arranging individual speech therapy, as the child was speaking at a substantially younger age level. Defendant also informed the court that he would be stationed in Suffolk for the "foreseeable future" and that his military duty no longer required deployments at sea. Defendant acknowledged that the child "misses" plaintiff but also informed the court that he had paid for Skype and telephone calls between the child and plaintiff while the latter was incarcerated. The court heard testimony from plaintiff and her parents, and it took the matter under advisement. In a 14-page opinion, the court found that there was proper cause and a change of circumstances to warrant revisiting the custody order, "namely Plaintiff's deliberate and repeated obstruction of Defendant's parenting time and relationship with the child." The court then found by clear and convincing evidence that it was in the best interests of the child for defendant to have sole legal and physical custody. The court considered each best-interest factor, weighing six in defendant's favor while not expressly weighing any in plaintiff's favor. Notably, with respect to factor (j), the court stated that "[o]ne of, if not the biggest concern for this Court over the lifespan of this case has been Plaintiff's unwillingness to facilitate a close relationship between the child and Defendant." The court found that "Defendant is heavily favored under this factor." The trial

court awarded plaintiff parenting time in accordance "with the Midland County Long Distance Parenting Plan." This appeal followed.

## II. PROPER CAUSE OR CHANGE OF CIRCUMSTANCES

Plaintiff first argues that the trial court erred in finding proper cause and a change of circumstances to warrant revisiting the existing custody order. We disagree. A trial court's order resolving a child custody dispute "shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. "This Court reviews a trial court's determination regarding whether a party has demonstrated proper cause or a change of circumstances under the great weight of the evidence standard." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009). A trial court's factual findings are against the great weight of the evidence when "the evidence clearly preponderates in the opposite direction." *Ireland v Smith*, 214 Mich App 235, 242; 542 NW2d 344 (1995), mod on other grounds 451 Mich 457 (1996).

Section 7 of the Child Custody Act, MCL 722.21 *et seq.*, allows a trial court to "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances," as long as the modification would be in the child's best interests. MCL 722.27(1)(c). "[P]roper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Vodvarka v Grasmeyer*, 259 Mich App 499, 511; 675 NW2d 847 (2003). "[I]n order to establish a 'change of circumstances,' a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a significant effect on the child's well-being, have materially changed." *Id*. at 513 (emphasis omitted). To constitute a change of circumstances under MCL 722.27(1)(c), "the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child." *Id*. at 513-514.

Plaintiff points to our acknowledgment in *Vodvarka* that caselaw established that "minor allegations of contempt or visitation complaints," *id*. at 509-510, were insufficient to establish proper cause or a change of circumstances and contends that the trial court relied on such conduct in this case. First, we disagree with the premise that there were "minor allegations" of contempt in this case. To the contrary, plaintiff was found in contempt of court on three separate occasions, the last of which resulted in a 30-day jail sentence. Further, there were ongoing "visitation complaints" in this case, including that plaintiff failed to produce the child at the airport for a prearranged pick-up, causing defendant's wife to needlessly fly from California to Detroit. Second, as stated, the test for proper cause is an event that "could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Id*. at 511. And plaintiff's interference with the child and defendant's relationship is plainly such an event. In addition to the parenting-time violations, plaintiff repeatedly facilitated the child calling her now ex-boyfriend "dad" and calling defendant by his first name. For those reasons, the court's finding that proper cause existed was not against the great weight of the evidence.

Further, defendant's circumstances had changed significantly since the last custody order in December 2013. Throughout most of the proceedings, defendant's military duty required him to be deployed at sea for months at a time. At the custody hearing, however, defendant explained that he is now essentially "land based." Moreover, defendant was married in April 2014 and had purchased a home in Virginia, where he would be located for the foreseeable future. Hence, defendant was now in a position to provide full-time physical care and custody to the child. Further, there was sufficient evidence from which to conclude that "the material changes have had or will almost certainly have an effect on the child." *Vodvarka*, 259 Mich App at 513-514. Specifically, defendant and his wife have addressed medical issues for the child, such as untreated cavities and immunizations. They have also provided a counselor for the child and have helped to greatly improve her recognition of "sight words." Considering that evidence in addition to defendant's new living situation, it cannot be said that the evidence clearly preponderated against the trial court's finding that there was a sufficient change of circumstances, allowing the court to consider a modification of the custody arrangement.

## III. CHANGE OF CUSTODY

Plaintiff's final argument is that the trial court erred by finding that defendant proved by clear and convincing evidence that granting him sole legal and physical custody was in the child's best interests. We disagree. We review the trial court's findings regarding the best-interest factors under the "great weight of the evidence" standard. *Fletcher v Fletcher*, 447 Mich 871, 881; 526 NW2d 889 (1994). We review the court's ultimate custody decision for an abuse of discretion. *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000). In the context of a child custody dispute, an abuse of discretion is found only in extreme cases wherein the trial court's decision is so palpably and grossly violative of fact and logic that it evidences the exercise of passion or bias or a perversity of will. *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013); *Shulick v Richards*, 273 Mich App 320, 324-325; 729 NW2d 533 (2006).

In this case, the trial court found that an established custodial environment existed with plaintiff[1] and therefore correctly concluded that defendant had the burden of proving by clear and convincing evidence that modifying the custodial environment was in the child's best interests. MCL 722.27(1)(c); *Pierron v Pierron*, 486 Mich 81, 92; 782 NW2d 480 (2010). MCL 722.23 defines the "best interests of the child" as "the sum total of the . . . factors" set forth in MCL 722.23(a)-(*l*), which are to be "considered, evaluated, and determined by the court." "In child custody cases, the family court must consider all the factors delineated in MCL 722.23 and explicitly state its findings and conclusions with respect to each of them." *Spires v Bergman*, 276 Mich App 432, 443; 741 NW2d 523 (2007). "This Court will defer to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008).

Plaintiff argues that the trial court erred in weighing the following best-interest factors:

---

[1] Defendant does not dispute the trial court's ruling with respect to the established custodial environment.

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

* * *

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

We have reviewed the record and conclude that the evidence did not clearly preponderate against the trial court's findings on these factors. *Ireland*, 214 Mich App at 242.

Plaintiff contends that the trial court erred in finding that neither party was favored under factor (a) when defendant "abandoned" the child until support proceedings were initiated. Plaintiff's argument focuses on defendant's history with the child, but factor (a) calls for the court to examine the "existing" "ties" between the parent and child. MCL 722.23(a). Since the support obligation was imposed, defendant has received an increasing amount of parenting time

with the child. At the time of the custody hearing, the child had been in his care for over a month. Defendant described his relationship with the child as "the normal father/daughter relationship I always wanted." Although it was undisputed that the child missed plaintiff, there was no testimony to suggest that the child did not also care for and love defendant. The trial court's finding that this was a neutral factor was not against the great weight of the evidence.

As for factor (b), the trial court found that the "distinguishing element of this factor arises in the parties' ability to provide the child guidance and continued education." In weighing this factor in defendant's favor, the court noted the disparity between the child's school attendance under each parent's care. The court also acknowledged testimony that the child's recognition of "sight words" had increased significantly while in defendant's care and that defendant practiced that skill with the child daily. Plaintiff argues that the trial court's focus on school attendance was "obviously imbalanced" as the child had only resided with defendant for a short period of time. However, it was established that the child had nine absences, four of which were unexcused, and numerous tardies in the first three months of the 2016 school year while under plaintiff's care. In contrast, in over a month in defendant's care, the child had only missed a few hours of school for a dentist appointment. Given the disparity, we fail to see how the trial court erred in relying on that evidence. Further, plaintiff does not acknowledge the child's increased proficiency in sight words. She fails to demonstrate that the court's finding was against the great weight of the evidence. Additionally, the same evidence sufficiently supports the trial court's finding that factor (h) weighed in defendant's favor.

With respect to factor (c), plaintiff fails to dispute the ample evidence relied on by the trial court in determining that defendant had a great capacity to provide life's necessities for the child. For example, the court noted that defendant was "a Second Class Petty Officer," that defendant and his wife addressed the child's untreated cavities, and that they were in the process of arranging individual speech therapy for the child. Plaintiff asserts that defendant took the child to "specialists" and would arrange "expensive follow-up appointments in Michigan" in order to reduce his child support obligation. Plaintiff has effectively abandoned this argument by failing to identify support in the record for this assertion.[2] "This Court will not search the record for factual support for a party's claim." *McIntosh v McIntosh*, 282 Mich App 471, 485; 768 NW2d 325 (2009). Further, it is not apparent from the record that any of the costs associated with "specialists" were unnecessary. Even assuming that defendant's child support obligation was reduced, there is still ample evidence to support the trial court's finding on this factor.

Next, plaintiff argues that there was error in weighing factor (d) in defendant's favor where the child had lived with her "for nearly all of the child's life" and had only been in defendant's temporary custody for "two months" at the time of the hearing. The trial court acknowledged that the child had lived with plaintiff most of her life but also found that period to be marked by instability, noting numerous residences during that time and plaintiff's various debts. In contrast, defendant had purchased a home in Virginia and was current on all his bills.

---

[2] Indeed, aside from citations to the trial court's opinion, plaintiff fails to provide any record citations as required by MCR 7.212(C)(6) and (7).

The court reasoned that "[t]he change in custody requested by Defendant would keep continuity with the current living arrangement, which it is clear Defendant and his wife have gone to great lengths to establish for the child in the short time they have had custody." We fail to see how the court erred in considering the desirability of continuing the "temporary custody" arrangement, especially when the child was excelling in school and defendant had already arranged doctors, a counselor, and individual speech therapy for the child. The evidence did not clearly preponderate against the trial court's finding that factor (d) weighed in defendant's favor. The same can be said for factor (e), which the trial court weighed based on similar evidence.

Plaintiff also contests the trial court's finding under factor (f) that there was no evidence presented regarding either party's moral fitness. Plaintiff again asserts that the court should have considered defendant's "abandonment" of plaintiff and the child. While we do not rule that the trial court was precluded from considering defendant's behavior before the support obligation was entered in 2013, we cannot say that the court erred by choosing to focus on the parties' most recent behavior. After defendant's paternity was determined, it appears that he fulfilled his child support obligation, followed court orders, and sought an ever increasing role in the child's life. Further, defendant disputed that he ever abandoned the child. The trial court's finding was not against the great weight of the evidence. For the same reasons, we reject plaintiff's argument that the court should have considered this matter under factor (*l*) as "[a]ny other [relevant] factor." MCL 722.23(l).

Plaintiff argues that factor (i) weighs in her favor because the child expressed a preference to live with her. The trial court interviewed the child and stated that it took her preference into consideration but did not reveal the preference. Plaintiff's claim is therefore not supported by the record.[3]

Plaintiff also challenges the trial court's finding that defendant was heavily favored under factor (j), which, again, concerns one parent facilitating and encouraging a close relationship between the child and the other parent. The trial court thoroughly recounted how plaintiff repeatedly violated its orders "that were specifically imposed to try and foster a relationship between Defendant and his daughter, his being on the other side of the country." The court also noted plaintiff's parents' hostile attitude toward defendant and his wife and that plaintiff had failed "to list Defendant as a parent on all documents and forms pertaining to the child," whereas defendant had accomplished that task. Plaintiff does not address the trial court's specific findings or the mountain of evidence supporting them. Instead, she merely maintains that "[b]oth parties have obstructed the parenting time of the other party" without providing record citations for the position that defendant "intentionally" caused some of the missed Skype visits. See *McIntosh*, 282 Mich App at 485. Considering the numerous contempt orders issued against

_____

[3] We note that the child was only five years old at the time of the custody hearing. Moreover, even if the child expressed a preference for plaintiff, we would still conclude that the trial court did not err in finding that there was clear and convincing evidence supporting the change in custody.

her on this matter, plaintiff's contention that factor (j) should have been evaluated as a neutral factor is simply without merit.

Finally, plaintiff argues that the trial court erred by finding that factor (k), domestic violence, did not weigh in either party's favor. Plaintiff testified that defendant once pushed her against her vehicle in the presence of the child. The trial court found this testimony lacking in credibility. We defer to the court's credibility determinations. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011).

In sum, there were legitimate concerns with plaintiff's care of the child, including untreated cavities and numerous unexcused absences from school. Defendant has addressed those issues while also arranging for counseling and individual speech therapy for the child. Additionally, the court plainly placed great weight on factor (j), which was within its discretion. *Berger*, 277 Mich App at 705. "It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents." MCL 722.27a(1) (governing parenting time). It can be inferred from the court's analysis that it doubted whether the child would be able to have a strong relationship with defendant if plaintiff retained custody. Indeed, plaintiff's repeated acts of contempt relative to parenting time were troubling and reflected an inability by plaintiff to facilitate and encourage a close and continuing parent-child relationship between defendant and his daughter. Conversely, there was no evidence suggesting that defendant had interfered with the relationship between plaintiff and the child. The trial court's custody decision did not constitute an abuse of discretion.

Affirmed. Having fully prevailed on appeal, defendant is awarded taxable costs under MCR 7.219.

/s/ William B. Murphy
/s/ Peter D. O'Connell
/s/ Kirsten Frank Kelly