*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NORMAN DOUGLAS NORWOOD, JR.,

      Plaintiff-Appellee,

v

MIKAEL JAQUESE NORWOOD, also known as
MIKAEL WESTRY,

      Defendant-Appellant.

UNPUBLISHED
January 29, 2019

No. 344707
Calhoun Circuit Court
LC No. 2012-003457-DM

Before: CAMERON, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant-mother, Mikael Jaquese Norwood, also known as Mikael Westry, appeals the trial court's order granting plaintiff-father, Norman Douglas Norwood, Jr., sole legal custody and primary physical custody of the parties' minor child. We affirm.

## I. FACTUAL BACKGROUND

The parties were married in June 2010 in Battle Creek. Father filed for divorce when the parties' child was not quite three years old. Father immediately sought custody of the child, and the trial court initially entered an ex parte order awarding father temporary custody of the child. However, the trial court later dissolved that order, awarded the parties joint legal custody, and awarded mother physical custody of the child. The trial court entered a consent judgment of divorce in August 2013. The consent judgment of divorce awarded both parties joint legal custody of the child, awarded mother physical custody, and awarded father parenting time.

Almost immediately, conflict arose regarding father's attempts to exercise his court-ordered parenting time. The trial court record is full of father's complaints that mother failed or refused to allow the child to visit him during his court-ordered parenting time. Father had moved to Saginaw while mother continued living in Battle Creek. The parties' scheduled pick-up and drop-off location was a police department in Lansing. On several occasions, father would drive from Saginaw to Lansing, and mother failed to show up with the child. The trial court held mother in contempt of court on three separate occasions for failure to follow court orders

regarding father's parenting time and other aspects of father's rights to parent the child. For instance, mother refused to keep father up to date on the child's medical issues and education. Mother went as far as to list her new husband as the father on the child's academic paperwork, and she did not tell father the pertinent details about a surgery that the child underwent. Ultimately, father moved for change of custody. After hearing a considerable amount of testimony, the trial court entered a written order in which it changed custody of the child, awarding father sole legal and primary physical custody of the child and awarding mother parenting time. The trial court found that (1) there was an established custodial environment with mother, (2) there was clear and convincing evidence demonstrating proper cause to justify a review of custody, and (3) it was in the child's best interests that custody be changed from mother to father. Mother now appeals the trial court's order changing custody of the child.

## II. STANDARDS OF REVIEW

A trial court's order resolving a child custody dispute "shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. This Court reviews a trial court's determination regarding whether a party has demonstrated proper cause or a change of circumstances under the great weight of the evidence standard. *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009). A trial court's factual findings are against the great weight of the evidence when the evidence "clearly preponderate[s] in the opposite direction." *Id*. (quotation marks and citation omitted).

In *Phillips v Jordan*, 241 Mich App 17; 614 NW2d 183 (2000), this Court set forth the three standards of review applicable in custody appeals:

> We apply three standards of review in custody cases. The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. [*Id*. at 20 (citations omitted).]

Furthermore, as this Court stated in *Mitchell v Mitchell*, 296 Mich App 513, 517; 823 NW2d 153 (2012), "All custody orders must be affirmed on appeal unless the trial court committed a palpable abuse of discretion, made findings against the great weight of the evidence, or made a clear legal error."

## III. PROPER CAUSE OR CHANGE OF CIRCUMSTANCES

Mother first argues that the trial court's decision that there was proper cause to justify a review of custody was against the great weight of the evidence. We disagree.

"The first step toward modifying a custody award is to show proper cause or a change of circumstances." *Id*. at 517. The movant bears the burden of proving by a preponderance of the evidence that either proper cause or a change in circumstances exists, before the trial court can

(1) consider whether an established custodial environment exists and (2) conduct a review of the best-interest factors. *Vodvarka v Grasmeyer*, 259 Mich App 499, 511-512; 675 NW2d 847 (2003). Proper cause "means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Id*. at 511. A trial court should rely on the 12 factors set forth in the statutory best-interest test when deciding whether a particular fact raised by a party is a proper or appropriate ground to revisit a custody order. *Id*. at 512. However, the *Vodvarka* Court cautioned that "not just *any* fact relevant to the twelve factors will constitute sufficient cause. Rather, the grounds presented must be 'legally sufficient,' i.e., they must be of a magnitude to have a significant effect on the child's well-being to the extent that revisiting the custody order would be proper." *Id*. Meanwhile, in order to establish a change in circumstances, "a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a significant effect on the child's well-being, have materially changed." *Id*. at 513. This will necessarily involve "a determination made on the basis of the facts of each case, with the relevance of the facts presented being gauged by the statutory best interest factors." *Id*. at 514. When considering a change of circumstances,

> evidence of the circumstances existing at the time of and before entry of the prior custody order will be relevant for comparison purposes, but the change of circumstances must have occurred *after* entry of the last custody order. As a result, the movant cannot rely on facts that existed before entry of the custody order to establish a "change" of circumstances. [*Id*.]

Finally, "[o]nly after a moving party has established proper cause or a change of circumstances may the trial court reevaluate the statutory best-interest factors." *Mitchell*, 296 Mich App at 517-518.

The trial court relied heavily on this Court's decision in *McRoberts v Ferguson*, 322 Mich App 125; 910 NW2d 721 (2017), to support its decision that the deliberate and repeated obstruction of parenting time constitutes proper cause and change of circumstances to revisit a custody order. In *McRoberts*, the trial court held the plaintiff-mother in contempt of court on three occasions for failing to allow the defendant-father his parenting time. *Id*. at 132. Noting that "the test for proper cause examines whether there is an appropriate ground that 'could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken,'" the *McRoberts* Court held that the plaintiff-mother's "interference with the child's and [father's] relationship is plainly such a ground." *Id*. at 132. Therefore, the *McRoberts* Court concluded that the trial court's finding that proper cause existed was not against the great weight of the evidence.

In the present case, the trial court found that mother repeatedly failed to follow court orders and failed to allow father his court-ordered parenting time. Applying the holding of *McRoberts* to those findings of fact, the trial court determined that mother's deliberate and repeated obstruction of father's parenting-time rights constituted proper cause to revisit custody of the child. The trial court's determination was not against the great weight of the evidence. The record is full of father's complaints that mother refused to allow him his court-ordered parenting time with the child. Father submitted his complaints to the Friend of the Court (FOC). The FOC, in turn, filed motions with the trial court seeking to hold mother in contempt of court.

There is no dispute that the trial court held mother in contempt of court, on three separate occasions, for failing to follow court orders. Mother's only explanation was that she wanted to keep the child for her birthday or activities that mother planned with her family members. The trial court even specifically found, at one point in the proceedings, that mother was purposefully scheduling activities for the child during father's parenting time. Based on the facts of record in this case, we cannot conclude that the trial court's finding that proper cause existed was against the great weight of the evidence. See *Corporan*, 282 Mich App at 605.

Mother does not focus her argument on proper cause, but only argues that there was no change of circumstances that occurred after the last custody order. Although mother focuses on the November 2016 parenting-time order as the last custody order, we do not agree that the November 2016 order qualifies as such. That order did not change the custody provisions of the August 2013 Consent Judgment of Divorce, only the details of the parties' rights to parenting time.[1] However, even if we were to consider that order to be the last custody order in this case, the trial court's decision was still not against the great weight of the evidence. The record indicates that mother has repeatedly and consistently interfered with father's parenting time and that mother emotionally manipulated the child in an attempt to alienate the child from father. The trial court's decision is not against the great weight of the evidence because the facts apparent from the record do not clearly preponderate in the other direction. See *Corporan*, 282 Mich App at 605.

## IV. STATUTORY BEST-INTEREST FACTORS

Mother next argues that the trial court's factual findings regarding the statutory best-interest factors were against the great weight of the evidence and that the trial court erred in finding that awarding custody of the child to father was in the child's best interest. We disagree.

"[W]hen a modification of custody would change the established custodial environment of a child, the moving party must show by clear and convincing evidence that it is in the child's best interest." *Phillips*, 241 Mich App at 25. In this case, the trial court found that an established custodial environment existed with mother. Therefore, it was father's burden to show, by clear and convincing evidence, that a change of custody was in the child's best interest. "[C]ustody disputes are to be resolved in the child's best interests," and "[g]enerally, a trial court determines the best interests of the child by weighing the twelve statutory factors outlined in MCL 722.23." *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001). Those factors are:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

---

[1] See *Shade v Wright*, 291 Mich App 17, 26-28; 805 NW2d 1 (2010) (holding that the definitions of proper cause and change of circumstances as articulated in *Vodvarka* apply to custody determinations but not to parenting-time determinations).

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. . . .

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23(a)-(*l*).]

Mother challenges the trial court's findings regarding best-interest Factors (c) (capacity and disposition to provide material needs); (d) (length of time in a stable, satisfactory environment); (f) (moral fitness); (h) (home, school, and community record); (j) (facilitation of a relationship with the other parent); and (k) (domestic violence).

The great weight of the evidence standard applies to all findings of fact in a custody case. *Phillips*, 241 Mich App at 20. A trial court's findings regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. *Id*. "An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions." *Id*. The trial court's factual findings as to any of the statutory factors is not against the great weight of the evidence, and the decision to change custody does not constitute an abuse of discretion.

## A. FACTOR C (CAPACITY AND DISPOSITION TO PROVIDE MATERIAL NEEDS)

Factor (c) is the "capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 222.23(c).

Mother argues that Factor (c) concerns both a parent's capacity and *disposition* to provide for the child's material needs, including the child's medical care. Mother acknowledges that the trial court found that Factor (c) favored father because he was working, attending school, and buying his own house, while mother was working part-time and was renting her home. However, mother argues that there was no evidence that mother was unable to provide for the child's material needs because her employment was part-time.

Furthermore, mother argues that the trial court's focus should have been entirely on the child's medical needs and the parties' *disposition*, rather than their capacity, to provide for those medical needs. Mother argues that the child had experienced serious medical issues since she was two years old, that she took two medications for bladder and urinary tract issues, and that she underwent surgery to remove a cyst from her temple. Mother argues that she has been the primary parent who has attended to the child's medical needs throughout her life. Mother argues that she took the child to her regular doctor's appointments and that she scheduled the surgery to remove the cyst. Mother argues, in contrast, that father only attended one medical appointment—the surgery to remove the cyst. Mother also argues that she is the person who provided the child with health insurance through Medicaid. Mother claims that father let the child drop from his health insurance without consulting mother, causing health insurance issues when the child required surgery. Mother further argues that, during the child's eight-week visit with father over summer break, the child's urinary tract issues made her uncomfortable, yet father never took the child to the doctor. While mother admits that her "communication issues" with father caused her not to share information about the child's medications with father, she claims that this is no excuse for father to have failed to independently investigate and figure out the child's medical issues on his own. Mother argues that these facts demonstrate that father is not disposed to provide for the child's medical care the way that mother is. Mother, therefore, argues that the trial court's decision that Factor (c) favored father was against the great weight of the evidence and that this factor should have favored mother.

We conclude that the trial court's factual finding that Factor (c) favored father was not against the great weight of the evidence. The trial court properly considered the fact that (1) mother only worked part-time and that she did not work in the summer; (2) mother was renting her home, which led to frequent moves and housing instability; (3) father was working, attending school, and buying a home rather than renting; and (4) father had lived in the same home for four years, during which time mother lived in three different rental dwellings. Furthermore, the trial court did focus on the child's medical issues, despite mother's argument that the court failed to do so. The trial court expressly noted that mother refused to tell father critical information about the child's medical needs, providers, and appointments. The trial court also expressed great concern with mother's practice of refusing to send the child's medication to father in the original prescription bottles, noting that mother repackaged the medication in plastic bags with sticky notes for instructions. The trial court noted that, because the child had visited the hospital multiple times for her medical issues, mother's refusal to tell father pertinent information about

her prescription medication was dangerous. The trial court's decision regarding Factor (c) was not against the great weight of the evidence.

### B. FACTOR D (LENGTH OF TIME IN A STABLE, SATISFACTORY ENVIRONMENT)

Factor (d) is "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 222.23(d). "Factor (d) is properly addressed by considering the environments in which the child has lived in the past and the desirability of maintaining the continuity of those environments." *Demski v Petlick*, 309 Mich App 404, 448-449; 873 NW2d 596 (2015).

Mother argues that, when the trial court rendered its decision changing custody, the child was eight years old; had always lived in Battle Creek; had attended the same elementary school for one year; had friends in Battle Creek; had relatives (of mother) in Battle Creek; and had activities, such as dance classes, in Battle Creek. Mother argued that these facts established a strong desirability of maintaining continuity for the child by continuing her in mother's custody in Battle Creek.

Mother concedes that the trial court considered the fact that the child had "tons of friends" at her school and church in Battle Creek, and that the trial court acknowledged that the child was "thriving" in Battle Creek. Mother argues that, despite those acknowledgements, the trial court failed to consider the impact of a drastic change in the child's life, daily routines, ability to spend time with her friends, and overall comfort level and feeling of stability. Mother admits that, "due to a school closing," the child attended three different schools over the course of three years while in mother's care. However, mother complains that the change of custody "uproots" the child by forcing her to "change schools once again." Mother argues that the trial court's decision that Factor (d) favored father was against the great weight of the evidence, and that this factor should have favored mother.

Mother also argues that, when analyzing Factor (d), the trial court improperly focused on the appropriateness of the future environment for the child in father's home. Instead, mother argues that the trial court was required to address the desirability of maintaining the child's continuity with mother, with whom the child had lived her entire life. Mother argues that the trial court erred in evaluating Factor (d) because it failed to abide by this Court's instruction in *Demski*. In that case, the trial court found that Factor (d) weighed equally in favor of both parents. On appeal, this Court held that the trial court failed to address the desirability of maintaining the child's continuity in her mother's custody, but only addressed the appropriateness of her father's future environment for the child. Accordingly, this Court held that the trial court's finding was based on clear legal error and should have favored the mother. *Demski*, 309 Mich App at 448-449.

We conclude that the trial court's finding that Factor (d) favored father was not against the great weight of the evidence. The trial court relied on the fact that mother moved several times during the three years preceding the trial court's decision to change custody. It is undisputed that mother did so and that mother also enrolled the child in three different schools over the course of three successive school years, showing a lack of stability in the child's life.

We cannot conclude that the trial court's decision regarding Factor (d) was against the great weight of the evidence.

## C. FACTOR F (MORAL FITNESS)

Factor (f) is "[t]he moral fitness of the parties involved." MCL 222.23(f). Mother argues that the trial court's factual finding regarding Factor (f) was unfair to her, that the trial court's decision was against the great weight of the evidence, and that this factor should have favored mother.

Mother argues that the trial court relied unfairly on an incident that occurred during the parties' parenting-time exchange scheduled to occur on April 13, 2017, to conclude that mother caused the child emotional harm. According to mother, the trial court questioned why she continued driving to Lansing on that day for the scheduled parenting-time exchange even after father told her that he was not going to meet her there. Mother argues that the trial court found that this act indicated a lack of moral fitness. Mother argues that she was simply confused about which parent had visitation that weekend, and she did not realize her mistake until she arrived at the exchange point. Mother argues that she was already on the road driving to the exchange point when father texted her that he was not coming because he would not have enough time to make it to work after he picked the child up. Mother argues that she was in the right to continue to the exchange point, despite the fact that she knew father would not be there. Mother argues that she was "rightfully wary" of not showing up at the exchange point, given the tumultuous relationship between the parties and the number of contempt motions that father had filed against her. Mother argues that it was understandable that she would want to ensure that she was at the scheduled parenting-time exchange point on time. Because the location for the exchange of the child was in Lansing, one hour or more away from both parties, mother argues that she had to plan ahead and leave early if she was going to be able to arrive on time.

Mother also argues that the trial court completely ignored father's actions that were more morally questionable than mother's. Mother argues that, in addition to being late or failing to show up to parenting-time exchanges, father made the child miss the dress rehearsal for her dance recital. Mother argues that she presented text messages regarding this incident that demonstrated without a doubt that father promised to bring the child to the rehearsal, and then father later stated that he would not do so. Father's excuse was that he did not believe that the child actually had a dress rehearsal. Mother argues that father's act was "unacceptable" and was far worse than mother driving to Lansing with the child to be on time for a parenting-time exchange so that she would not get in trouble with the court.

The trial court's finding as to Factor (f) was not against the great weight of the evidence. The trial court reviewed video recordings of the parties' parenting-time exchanges and found that mother was emotionally manipulating the child in an attempt to alienate the child from father. The trial court also considered multiple different occasions—not just the single occasion addressed by mother in her appellate brief when mother drove the child from Battle Creek to Lansing even though she knew in advance that no parenting-time exchange would occur. We cannot conclude that the trial court's decision was against the great weight of the evidence.

## D. FACTOR H (HOME, SCHOOL, AND COMMUNITY RECORD)

Mother argues that the trial court's decision regarding Factor (h) was against the great weight of the evidence and that this factor should have favored mother. Factor (h) involves "[t]he home, school, and community record of the child." MCL 222.23(h). Mother maintains that "the child has tons of friends at school and church and is thriving in Battle Creek." However, mother asserts that father only attended one school event, and he had not met the child's teacher until December 2017.

Mother argues that the trial court's decision regarding Factor (h) seemed to be entirely based on mother's alleged exclusion of father from involvement in the child's education. Mother takes issue with the trial court's statement that it was "appalled" that mother listed her new husband as the child's father on her school paperwork. Mother claims that her new husband was never truly represented to be the child's father. Mother protests that she simply listed her husband as the child's emergency contact and clearly noted that he was a stepparent, not a parent. Mother argues that the only reason that she listed her new husband on the first page of the school paperwork in the "father" contact spot was because mother did not have father's telephone number when she filled out that paperwork. Mother highlights the fact that the child's teacher testified that mother's new husband was never represented to her as the child's father, and the child did not call him "dad." Mother also argues that she corrected the school paperwork once she acquired father's telephone number. Mother insists that the manner in which she filled out the child's school paperwork "has nothing to do with the child's home, school, and community record." Mother contends that the trial court should have considered the fact that the child was doing extremely well in school, was very involved in the community and in church, and that the child was involved in other activities such as dance. Mother argues that the trial court changed custody of the child to a parent who lives in a different city, uprooting the child from the community in which she had been growing up and in which she had been thriving.

We conclude that the trial court's finding that Factor (h) favored father was not against the great weight of the evidence. Although the record indicates that the child was progressing socially and academically, the evidence was equally clear that the child had no stability while in mother's physical custody, as mother lived in three different rental homes and enrolled the child in three different schools over three successive school years. Furthermore, the trial court's focus on mother's intentional exclusion of father from the child's schooling was appropriate. The evidence was clear that mother changed the child's school several times without consulting father, refused to tell father where the child attended school, and intentionally prevented father from being able to participate in the child's school activities. In fact, mother listed her new husband as the child's father on the school paperwork, and the school's administration would not initially allow father pick the child up as ordered by the court. We cannot conclude that the trial court's decision regarding Factor (h) was against the great weight of the evidence.

## E. FACTOR J (FACILITATION OF A RELATIONSHIP WITH THE OTHER PARENT)

Factor (j) is "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 222.23(j).

The trial court found that father had proven by clear and convincing evidence that mother "does not keep him in the loop" and that mother failed to follow court orders. Mother contends that the trial court erred with regard to both of these findings. Mother argues that, while she "is not perfect," father "violates orders as often as she does," and most of father's complaints about her were due to "unintentional, reasonable tardiness or a misunderstanding." Mother argues that father repeatedly sought to hold her in contempt of court with no legitimate basis and that father's frequent complaints about mother and his attempts to send her to jail "over minor issues" is evidence that father failed to facilitate and encourage a strong relationship between the child and the other parent.

Although mother concedes that there were three occasions when the trial court held her in contempt of court, she objects that (1) the first contempt citation, for denial of parenting time, occurred before the November 2016 parenting-time order and, therefore, cannot be counted against her; (2) the second contempt citation was issued because mother denied father parenting time over the 2016 Christmas break, but that was issued simply because mother could not prove that it was really father's fault; and (3) the third contempt citation was for mother's failure to inform father of the child's surgery, and the trial court unreasonably refused to let mother prove that father already knew the date of the surgery from other sources and, therefore, it was irrelevant that she tell him about the surgery. Mother also argues that, in addition to finding that she violated court orders, the trial court found that mother failed to keep father informed about the child's life. Mother argues that (1) she proved at two different hearings that the parties' communication issues were father's fault because he refused to give mother a telephone number; (2) mother did not have a telephone number at which to contact father until December 11, 2017; and (3) father's complaints about information were from before December 11, 2017.

We conclude that the trial court's finding that Factor (j) favored father was not against the great weight of the evidence. The trial court made clear that it weighed Factor (j) much more heavily than the other best-interest factors. It is undisputed that the trial court held mother in contempt of court, on three separate occasions, for her failure to follow court orders in this case. The record is also clear that mother repeatedly and intentionally excluded father from the child's life in multiple respects, including her attempts to exclude father from both education and medical decisions regarding the child, in addition to mother's attempts to emotionally manipulate the child so as to alienate her from father. For instance, mother would tell the child, before father's parenting time, that the child would miss out on all of the fun activities that would take place while she was gone. We cannot conclude that the trial court's decision regarding Factor (j) was against the great weight of the evidence.

### F. FACTOR K (DOMESTIC VIOLENCE)

Factor (k) is "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child."

With respect to Factor (k), mother argues that the trial court relied on a personal protection order (PPO) between mother and father's wife that was granted in 2014 and expired in 2015. Mother argues that the PPO was granted two years before the November 2016 custody order that reaffirmed mother's primary physical custody of the child. Mother argues that, "[b]ecause the incident was so long ago, to find this factor favored Plaintiff-Father was against

the great weight of the evidence.  At the very least, it should not have been weighed significantly."  Notably, mother does not deny that she attacked father's wife, or that a circuit court issued father's wife a PPO to protect her from the conduct of mother and her family members.  Mother simply argues that her domestic violence assault against father's wife was "so long ago" that it is unfair to consider it when weighing Factor (k).

We conclude that the trial court's factual finding that Factor (k) favored father was not against the great weight of the evidence.  There is no evidence in the record that father ever engaged in any type of domestic violence.  Yet, it is uncontroverted that the circuit court issued both father and his wife PPOs because of the assaultive conduct of mother and her family.  We cannot conclude that the trial court's decision regarding Factor (k) was against the great weight of the evidence.

Thus, we find no error in the trial court's decision to grant sole legal custody and primary physical custody of the child to father.

Affirmed.

/s/ Thomas C. Cameron
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause

-11-