*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JACOB RHODES,

       Plaintiff-Appellant,

UNPUBLISHED
November 21, 2023

v

VICTORIA DUFOUR,

       Defendant-Appellee.

No. 364808
Oakland Circuit Court
Family Division
LC No. 2022-511710-DP

Before: BOONSTRA, P.J., and GADOLA and MALDONADO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order regarding custody, parenting time, and child support, which granted defendant sole legal custody and primary physical custody of the parties' child, CNCD. We affirm in part, reverse in part, and remand.

## I. FACTUAL BACKGROUND

The parties share one minor child, CNCD. Plaintiff and defendant were never married and their relationship ended before CNCD's birth. Plaintiff filed a complaint to establish paternity, custody, and parenting time. In the complaint, plaintiff asserted that he was the father of CNCD but defendant refused to list plaintiff on the child's birth certificate or sign the affidavit of paternity. Plaintiff expressed that if the paternity testing revealed he was the father of CNCD, plaintiff desired joint legal custody of CNCD, physical custody of CNCD, and parenting time in frequency and duration that suited the best interests of CNCD. Plaintiff further noted CNCD was born out of wedlock, defendant refused to consent to biological testing of CNCD, and plaintiff was educated, healthy, employed, and fit to properly parent CNCD.

Defendant then filed a counterclaim for custody, parenting time, and child support. In the counterclaim, defendant provided that (1) she recognized plaintiff was CNCD's father, and agreed to DNA testing of CNCD, (2) plaintiff displayed domestic violence towards defendant in the forms of emotional abuse, harassment, and intimidation, (3) she offered plaintiff various forms of contact with CNCD, and (4) plaintiff exhibited concerning behavior which presented a threat to defendant and CNCD. Defendant requested sole legal and physical custody of CNCD, in addition to child support according to the Michigan Child Support Formula Manual.

-1-

The trial court entered a temporary order establishing paternity and interim parenting time. The order found that plaintiff is the biological father of CNCD and ordered the parties to sign an affidavit of parentage. Further, the order established the time frame for plaintiff's supervised parenting time on Tuesdays and Saturdays. Defendant then filed a motion to modify parenting time in which she requested an agency supervise the visits instead of herself because she alleged plaintiff falls asleep and uses marijuana during his parenting time.

Following a three-day bench trial, the trial court issued its opinion and order regarding custody, parenting time, and child support. The opinion and order (1) granted defendant sole legal custody of CNCD, (2) ordered supervised parenting time for plaintiff at an unspecified duration and frequency, at plaintiff's expense, and (3) established child support in accordance with the Michigan Child Support Formula Manual. With regard to physical custody, the court first determined that an established custodial environment existed with defendant because defendant was CNCD's primary caregiver, CNCD resided with defendant since his birth, and plaintiff failed to meet with CNCD since October 2022. Per the best-interests factors iterated under MCL 722.23, the trial court determined that the majority of the factors favored defendant, and concluded by clear and convincing evidence that it was not in CNCD's best interests to change the established custodial environment with defendant.

With regard to parenting time, the trial court provided that because CNCD was 11 months old at the time of the bench trial, and plaintiff failed to sufficiently address his mental health issues, potential marijuana use, and tendency to leave CNCD in the care of relatives, graduated supervised parenting time was appropriate. The court further dictated that plaintiff was required to participate in random drug screening and mental health counseling, in addition to complying with his prescribed medication. Defendant now appeals the trial court's opinion and order.

## II. CHILD CUSTODY

Plaintiff argues the trial court erred when it awarded defendant sole legal custody of CNCD because it failed to adequately consider the alternative of joint legal custody of CNCD despite plaintiff's request. Plaintiff also argues the court made findings against the great weight of the evidence with regard to MCL 722.23(j), which addresses the willingness and ability of each party to facilitate a close and continuing parent-child relationship between the child and the other parent. We disagree.

"In matters involving child custody, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." *Brown v Brown*, 332 Mich App 1, 8; 955 NW2d 515 (2020) (quotation marks and citation omitted). This Court reviews the trial court's factual findings under the great weight of the evidence standard in which this Court "should not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction. *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010) (citation omitted). Further, we defer to the trial court's assessment of witness credibility. *Brown*, 332 Mich App at 9. A trial court's decision to change custody is reviewed for an abuse of discretion. *Id*. at 8. An abuse of discretion occurs when the trial court's decision is "palpably and grossly violative of fact and logic." *Id*. (citation omitted). And finally, this Court reviews the trial court's legal conclusions and determination of the child's best interests for clear error. *Id*. at 8-9.

In Michigan, the Child Custody Act of 1970, MCL 722.21 *et seq*., governs the issue of child custody. In custody disputes, the parents shall be advised of joint custody, and, "[a]t the request of either parent, the court shall consider an award of joint custody, and shall state on the record the reasons for granting or denying a request." MCL 722.26a(1). "Joint custody" means an order of the court in which one or both of the following is specified:

> (a) That the child shall reside alternately for specific periods with each of the parents.
>
> (b) That the parents shall share decision-making authority as to the important decisions affecting the welfare of the child. [MCL 722.26a(7).]

When a trial court examines a request for joint custody, it should determine whether joint custody is in the best interests of the child by considering the factors enumerated in MCL 722.23 and "whether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1).

"[T]he family court must consider all the factors delineated in MCL 722.23 and explicitly state its findings and conclusions with respect to each of them." *McRoberts v Ferguson*, 322 Mich App 125, 134; 910 NW2d 721 (2017). "The trial court need not necessarily engage in elaborate or ornate discussion because brief, definite, and pertinent findings and conclusions regarding the contested matters are sufficient." *Foskett v Foskett*, 247 Mich App 1, 12; 634 NW2d 363 (2001). Furthermore, regarding MCL 722.26a(1)(b), this Court has provided:

> In order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to cooperate with each other in joint decision-making. If two equally capable parents… are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children. [*Bofysil v Bofysil*, 332 Mich App 232, 249; 956 NW2d 544 (2020) (citation omitted).]

The trial court, in its opinion and order, evaluated each of the best-interests factors enumerated under MCL 722.23, which broadly favored defendant, and it further determined that the parties generally appeared unable to cooperate and agree on critical decisions concerning the welfare of CNCD. The court opined:

> The evidence demonstrated a somewhat contentious relationship between the parties. The parties have generally been able to agree regarding medical decisions for the child. Nevertheless, the parties disagree regarding Plaintiff-Father's parenting abilities and the need for supervised parenting time. The Court is concerned that conflict between the parties may make agreement difficult once Plaintiff-Father graduates to unsupervised parenting time.

While plaintiff argues the trial court simply alluded to the parties' various disagreements without adequately addressing defendant's history of inhibiting the relationship between CNCD and plaintiff, the court was only required to provide "brief, definite, and pertinent findings and conclusions regarding the contested matters . . . ." *Foskett*, 247 Mich App at 12. Furthermore, the court implicitly credited defendant's testimony, as opposed to plaintiff's, to

determine the nature of the parties' relationship and its turbulent history. This Court will defer to the trial court's determinations of witness credibility. See *Brown*, 332 Mich App at 9.

Plaintiff argues that the trial court's comment at the outset of the bench trial that his request for 50-50 unsupervised parenting time constituted an "unrealistic expectation" demonstrated the court's animosity towards plaintiff. However, it appears the court was simply stating that it seemed impractical to order joint physical custody of CNCD given that he was less than one year old at the time of the trial. Regardless, it is well established that "a court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009).

Plaintiff further asserts that the trial court erred in finding that the factor MCL 722.23(j) favored both parties equally. MCL 722.23(j) considers the "willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents…." Plaintiff argues that the trial court's finding went against the great weight of the evidence.

With regard to MCL 722.23(j), the trial court stated, "Defendant-Mother initially facilitated parenting time between Plaintiff-Father and the child. Thereafter, Defendant-Mother agreed to lower Plaintiff-Father's child support obligation so that he could afford the supervised parenting time. The Court finds this factor to be equal." Plaintiff argues that the court ignored the evidentiary record which clearly established defendant actively inhibited the relationship between plaintiff and CNCD by (1) generally barring plaintiff from attending relevant medical appointments and the birth of CNCD, (2) prohibiting plaintiff from signing the birth certificate, and defendant refusing to sign the affidavit of paternity, and (3) requiring supervised parenting time for plaintiff, which constituted a significant cost and limited plaintiff's visitations with CNCD.

The evidentiary record demonstrates otherwise. Defendant testified that plaintiff asked to be present during defendant's medical appointments concerning CNCD, and plaintiff attended the first two scheduled ultrasounds. However, plaintiff was barred from attending any subsequent appointments after plaintiff harassed defendant by demanding to discuss the custody agreement during the ultrasound. Regarding the second ultrasound appointment, defendant maintained that plaintiff was berating her regarding the custody arrangement and the name of CNCD. Defendant expressed that she felt this was not an appropriate place to discuss custody or names. Plaintiff continued the discussion despite defendant's objections, defendant directed plaintiff to leave, and the nurse returned with a card for a domestic violence hotline and informed the parties she contacted security. Defendant detailed that plaintiff "kept stating he was going to get 50/50, that I would go broke if it wasn't things he liked, that I needed to give him answers, that the kid would have his last name; things along those lines."

Defendant additionally testified that plaintiff requested to be present at CNCD's birth, however, due to COVID-19 protocol, defendant was only permitted to have one person present in the birthing room, and defendant opted to have her mother there. Defendant notified plaintiff of CNCD's birth approximately 24 hours later, but plaintiff was unable to visit with CNCD until a week afterwards because defendant and CNCD were hospitalized for five days due to birth complications, of which plaintiff was aware. Moreover, the first visitation occurred in plaintiff's home with CNCD, defendant, and numerous members of plaintiff's family present. The subsequent visitations occurred in a public location due to advice from defendant's previous counsel. Defendant offered to supervise parenting time between plaintiff and CNCD

because she desired to facilitate a relationship between CNCD and plaintiff in a safe space. Furthermore, defendant agreed to reduce the mandatory child support fees to accommodate the significant cost of supervised parenting time.

While plaintiff argues that defendant voiced her disapproval of the various supervision agencies recommended by plaintiff, in order to limit plaintiff's parenting time, the evidentiary record suggests otherwise. Defendant expressed her discontentment with Mobile Court Services because the entity failed to provide reports regarding plaintiff's parenting time and replaced supervisors without adequate explanation. Defendant contacted the Livingston Family Center to reinitiate plaintiff's visitations with CNCD, and scheduled an intake appointment. Defendant felt uncomfortable proceeding with other suggested agencies because the entities lacked any formal certification or training processes regarding supervision.

There is no indication either party was unwilling to foster a relationship between the other parent and CNCD, therefore, the trial court appropriately concluded MCL 722.23(j) favored the parties equally. Ultimately, the trial court did not err in its determination that defendant's sole legal custody of CNCD was in the child's best interests, and the court's findings on MCL 722.23(j) were not against the great weight of the evidence.

## III. PARENTING TIME

Plaintiff argues the trial court erred when it awarded sole physical custody of CNCD to defendant and issued limited, supervised parenting time to plaintiff because (1) the court made findings against the great weight of the evidence regarding MCL 722.23(g), which addressed plaintiff's mental health, and (2) the court failed to grant parenting time in precise terms despite both parties requesting a specific parenting time schedule.

The trial court is required to consider "[t]he mental and physical health of the parties involved" when determining the best interests of a child. MCL 722.23(g). Plaintiff contends that the trial court relied on outdated information to determine that plaintiff's mental health remained unstable, despite the results of plaintiff's psychological evaluation and the testimony of Dr. Craig Lemmen, a forensic psychiatrist. Plaintiff also claims the court failed to adequately consider plaintiff's significant progress in addressing his mental health, which included individual counseling, psychiatric care, and various medications. In its opinion and order, the trial court opined the following regarding MCL 722.23(g):

> Plaintiff-Father was diagnosed with major depressive disorder, anxiety, and PTSD. He had a mental health incident involving threats of suicide on July 8, 2021, which resulted in hospitalization for five days. The psychological references self-reported ongoing suicidal ideation. Defendant-Mother credibly testified that Plaintiff-Father's older child, MR, was present during previous mental health incidents involving Plaintiff-Father. Plaintiff-Father suffered from asthma but it generally did not affect his ability to parent.
>
> Defendant-Mother has mild depression for which she takes medication. There was no evidence that Defendant-Mother had any other mental or physical health conditions at the time of trial.
>
> This factor favors Defendant-Mother.

-5-

The evidentiary record demonstrates the court's ruling concerning MCL 722.23(g) was not against the great weight of the evidence. Defendant testified that the July 2021 incident, which led to plaintiff's hospitalization, transpired after defendant informed plaintiff she intended to terminate their relationship. Defendant explained that (1) plaintiff "had started screaming and throwing things, I was scared so I ended up calling my mother who witnessed via FaceTime the entire thing[,]" (2) plaintiff punched a hole through a wall and cabinet, (3) plaintiff threw a laundry basket at the pregnant defendant, and (4) plaintiff stated that "it should have been my face he was punching, which he also admitted later via text." Defendant further testified that she called 911 and told the operator that plaintiff was suicidal and threatening to harm himself, with plaintiff screaming in the background that he would "take down" law enforcement if officers arrived at the residence. Defendant asserted that plaintiff previously exhibited similar outbursts, during which he would threaten suicide as a form of manipulation, while his other child, MR, was present.

While Dr. Lemmen did not believe plaintiff would present a risk of harm to CNCD, and supervision appeared unnecessary during visitations, the trial court considered the findings of Dr. Frederick, a national expert in the area of psychological testing, in the compiled psychological report, which detailed plaintiff was "impulsive, reckless, and excitable, forgetful, distractible, inattentive, and having thoughts about killing himself . . . ." Plaintiff also asserts the trial court erred in stating plaintiff has PTSD, but plaintiff himself testified that he has a PTSD diagnosis. Furthermore, plaintiff admitted that he was previously diagnosed with major depressive disorder, PTSD, and anxiety, and prescribed various antidepressants, mood stabilizers, antianxiety drugs, and a low dose of antipsychotic medication to treat his mental health concerns. While plaintiff actively participated in psychiatric care and individual counselling to address the aforementioned matters, his previous outbursts were clearly of concern to the trial court, particularly when compared to defendant, who solely suffered from "mild depression." Consequently, the trial court's conclusion that MCL 722.23(g) favored defendant was not against the great weight of the evidence.

Plaintiff further argues the trial court erred when it failed to enumerate specific terms for parenting time despite the parties' request, which constitutes a violation of MCL 722.27a(8). "A child has a right to parenting time with a parent unless it is shown on the record by clear and convincing evidence that it would endanger the child's physical, mental, or emotional health." MCL 722.27a(3). MCL 722.27a(8) provides that "[p]arenting time shall be granted in specific terms if requested by either party at any time."

In plaintiff's closing argument brief, he explicitly requested unsupervised parenting time every weekend from Friday to Monday, in addition to alternating Wednesdays. In defendant's trial brief, she advanced that she desired a parenting time schedule identical to the prior temporary order, which consisted of two-hour supervised sessions twice per week. However, the trial court's final order simply stated that it "is awarding [plaintiff] graduated parenting time," which is to be supervised by an agency at plaintiff's expense. However, the court neglected to award parenting time in a frequency, duration, and type reasonably calculated to promote a strong relationship between CNCD and plaintiff. Because MCL 722.27a(8) mandates the trial court to order parenting time in "specific terms" if a party requests it, the court committed clear legal error on a major issue by awarding plaintiff parenting time in ambiguous terms. Consequently, we reverse the parenting time order and remand for the trial court to clearly indicate the frequency and length of plaintiff's supervised parenting time.

Affirmed in part, reversed in part, and remanded to the circuit court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Allie Greenleaf Maldonado