*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES ANDREW PECK,

        Plaintiff-Appellee,

v

COURTNEY ANN PECK,

        Defendant-Appellant.

UNPUBLISHED
February 7, 2019

No. 344124
Oakland Circuit Court
LC No. 2014-822939-DM

Before: GLEICHER, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Since the parties' 2014 separation, the circuit court has entered several orders governing custody of the parties' two daughters. Defendant appeals the court's most recent mandate—a May 17, 2018 order granting permanent sole legal and physical custody to plaintiff and continuing to limit defendant's parenting time to two hours of weekly visits supervised by a therapist. Defendant contends that Oakland Circuit Court Judge Karen McDonald, who took over the proceedings on December 30, 2016, should have been disqualified as she previously worked at the law firm that represented defendant in related proceedings. In relation to the current order, defendant challenges the circuit court's exclusion of certain evidence and contends that the court misrepresented that its evidentiary hearing regarding custody and parenting time would only pertain to the admissibility of evidence. She also contests the court's judgment that its custody order is in the children's best interests. We discern no errors and affirm.

## I. BACKGROUND

Plaintiff filed for divorce on August 20, 2014, after defendant accused him of domestic violence against her[1] and falsely accused him of sexually abusing their children. Defendant's parents had also initiated a probate court action to have defendant committed to a residential

---

[1] Plaintiff was arrested on suspicion of domestic violence in June 2014 and was later convicted and sentenced to probation for "disorderly person."

facility to address alcohol, drug, and mental health issues. Before the divorce could be finalized, defendant had a baby boy with a Florida man with whom she had been having an affair. She was arrested for fleeing from the police at high speeds with her baby in her vehicle. Then, defendant kidnapped her daughters after an agreed-upon vacation to northern Michigan, fleeing to Florida. Ultimately, the court limited defendant to supervised parenting time with a therapist.

The court later revisited its parenting time order and determined that awarding sole legal and physical custody to plaintiff was in the children's best interests. Specifically, defendant remained unemployed and had been living with her young son and an aunt. Defendant and her boyfriend had engaged in a physical altercation in her aunt's garage. Her aunt summoned the police and evicted defendant. Defendant had since been living at a hotel. Defendant had also purchased a home on an Indian reservation in the Upper Peninsula. The court found reasonable plaintiff's fears that defendant would abscond with the children to the Upper Peninsula if allowed unsupervised parenting time. The court also accepted the testimony of Dr. Larry Friedberg that defendant was not yet ready for unsupervised parenting time, let alone shared custody, of her daughters.

## II. JUDICIAL BIAS

Defendant first contends that Judge Karen McDonald should have disqualified herself from these proceedings. Defendant notes that earlier in the proceedings, when Judge Elizabeth Pezzetti presided, the court's rulings were not wholly against her. This tide appeared to change when Judge McDonald took over. Defendant contends that Judge McDonald was biased against her because the judge was previously a partner at Jaffe, Raitt, Heuer & Weiss. Defendant retained an attorney from Jaffe to represent her in "the involuntary committal and guardianship proceedings" initiated by defendant's parents in the probate court. Jaffe terminated the relationship after only three months because defendant did not pay her bill. Defendant contends that Judge McDonald's former employment allowed her access to the case file outside of her role as judge and suggests that defendant's failure to pay her bill could have had a negative financial impact on McDonald, coloring her view of the case.

Had Judge McDonald been employed at Jaffe while defendant's divorce proceedings were pending, and had Jaffe represented defendant in the divorce, further inquiry would have been required to gauge her knowledge of the matter. MCR 2.003(C)(1)(c)-(f) support judicial disqualification when the judge "has personal knowledge of disputed evidentiary facts concerning the proceeding," was "consulted or employed as an attorney in the matter in controversy," was a member of a law firm that represented a party "within the preceding two years," or "has more than a de minimis economic interest in the subject matter in controversy." However, Judge McDonald was elected to the Oakland Circuit Court in November 2012.[2] Defendant did not retain an attorney at the Jaffe firm until September 2014, almost two years later. As Judge McDonald was no longer connected with Jaffe when defendant hired the firm, the judge could have no personal knowledge of the facts underlying this case or the probate

---

[2] See <https://www.oakgov.com/courts/circuit/judges/family/Pages/mcdonaldk.aspx> (accessed January 7, 2019).

matter, could not have served as an attorney or been consulted regarding this matter, and could have experienced no financial impact from defendant's failure to pay her bill.

Defendant argues that Judge McDonald should have been disqualified under MCR 2.003(C)(1)(e) because she was a partner or member of Jaffe within the two years preceding the filing of the divorce suit. However, Judge McDonald did not take over the case until December 2016, four years after she left her employ at Jaffe. Moreover, as soon as Judge McDonald discovered that defendant had briefly been represented by a Jaffe attorney, the judge disclosed her prior relationship with the firm:

> *The Court*: I notice[d] that [defendant] w[as] represented at one time by Jaffe, Raitt, Heuer, and Weiss.
>
> *[D*efendant]: I was.
>
> *The Court*: That is my former law firm. I don't remember ever meeting you and had nothing to do with your representation. Is that true, because I have a bad memory? I never met you, right?
>
> *[Defendant]*: I wouldn't know.
>
> *The Court*: It was [Elizabeth L.] Luchenbach. I've never met [defendant]. I just wanted to make that clear. I needed to disclose that.

It is clear that Judge McDonald would not have met defendant in her role as an attorney at Jaffe as McDonald no longer worked at the law firm. Given the passage of time and the lack of any relationship between Judge McDonald and defendant, disqualification was not warranted under subsection (e).

In any event, defendant has cited no particular act demonstrating Judge McDonald's alleged deep-seated favoritism or bias. Accordingly, we need not remand for further proceedings before a different judge.

### III. ADMISSIBILITY OF FRIEDBERG REPORT

Defendant challenges the circuit court's preclusion of a report prepared by Dr. Friedberg, documenting his observations during supervised parenting time sessions. In the fall of 2017, defendant filed a show cause motion against plaintiff because he failed to bring their daughters to a supervised parenting time session with Dr. Friedberg. It appears that Dr. Friedberg had recommended that supervised parenting time be moved to the home of defendant's aunt in Bloomfield Hills. At the December 13, 2017 show cause hearing, plaintiff stated that he disagreed with the doctor's recommendation because of defendant's history of parental kidnapping and the danger that defendant would flee with the children to her Upper Peninsula home. Plaintiff also questioned Dr. Friedberg's ability to supervise parenting time as he allowed defendant to serve a motion on plaintiff in front of the children. The court indicated that it would not rule on the show cause motion until it heard from Dr. Friedberg. Defendant offered to present Dr. Friedberg's report, but the court stated, "[I]t's not admissible. It has to be him testifying. . . ." The court indicated that a hearing would be scheduled at which Dr. Friedberg

-3-

would have to testify. This hearing occurred on April 13, 2018.[3] Dr. Friedberg appeared and testified. Neither party sought to admit his report at that time.

Defendant cites multiple evidentiary rules and statutes to support that Dr. Friedberg's report was admissible evidence. The circuit court likely excluded the doctor's report at the December 13, 2017 hearing because its contents would have been hearsay and plaintiff disagreed with the recommendation made by the doctor in the report. Even if the court's decision not to accept the report at that hearing was improper, any error could have been remedied at the April 13, 2018 hearing. Dr. Friedberg appeared and submitted to direct and cross-examination. Dr. Friedberg testified that the children were comfortable with their mother and that defendant acted appropriately during sessions. Dr. Friedberg wanted to encourage the mother-child relationship, but "in a safe way." He opined that unsupervised parenting time should not begin at that time; rather, parenting time supervision should be reduced in "a step situation." Plaintiff's counsel noted that Dr. Friedberg's assistant documented in a report "that there should be about at least [12] to 18 months of behavioral stability" before defendant be allowed unsupervised parenting time. Dr. Friedberg agreed with that statement. Defendant questioned Dr. Friedberg as well but did not attempt to introduce his report, either to impeach Dr. Friedberg or to ensure a complete record.

Unfortunately, defendant never provided Dr. Friedberg's report to the circuit court or to this Court.[4] Accordingly, we are unable to review the report and assess its admissibility. See MRE 103(a)(2); *Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 291-292; 730 NW2d 523 (2006) (cleaned up)[5] (holding that absent an offer of proof regarding excluded evidence, this Court has no means "to decide whether to sustain the trial court's ruling"). Defendant cannot support her claim for relief and we are bound to affirm in this regard.

---

[3] Defendant contends that the circuit court improperly resolved issues of custody and parenting time at the April 2018 hearing as it had advised her that the hearing would pertain only to the admissibility of Dr. Friedberg's report. The court's order denying defendant's motion to show cause specifically stated, "An evidentiary hearing shall be set for March 8, 2017 [sic] at 9:00 a.m. regarding parenting time for a full day." That evidentiary hearing was then adjourned until April 13, 2018. Moreover, the court's oral ruling was that it would take evidence directly from Dr. Friedberg, not that it would consider the admissibility of the doctor's report after hearing from the doctor. Defendant's challenge is without merit.

[4] Defendant attached as exhibit E to her appellate brief a *letter* from Dr. Friedberg detailing certain communications with the parties. This is not the report referred to in the record, contrary to defendant's assertion.

[5] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, Cleaning Up Quotations, 18 J App Pract & Process 143 (2017).

## IV. CUSTODY RULING

Defendant argues that the circuit court erred by granting permanent sole legal and physical custody to plaintiff without first finding that she was an unfit parent or that the children were at risk of harm in her custody. Defendant further contends that the court erroneously applied the best-interest factors applicable to child custody cases in fashioning its ruling.

Defendant contends that plaintiff was held to a higher burden of proof (establishing that she was an unfit parent) before he could be awarded full custody of their children because defendant and their daughters are registered members of an Indian tribe.[6] Defendant cites no statute setting standards in relation to Indian children. Instead, defendant cites MCL 722.25(1), which provides:

> If a child custody dispute is between the parents, between agencies, or between third persons, the best interests of the child control. If the child custody dispute *is between the parent or parents and an agency or a third person, the court shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established* by clear and convincing evidence. [Emphasis added.]

The plain language of this statute imposes a higher burden only when the custody dispute is between a parent and a nonparent. As this custody dispute was between two parents, the best interests of the children controlled.

Defendant further contends that as the court's order significantly interfered with her constitutional right to care and custody of her children, the circuit court should have imported standards from Michigan's child protection laws, MCL 712A.1 *et seq*., regarding the termination of parental rights. Defendant has cited no legal authority permitting this cross-over and we similarly have found no support. After all, a custody order granting unequal parenting time can be revisited in the future while an order terminating parental rights cannot. Rather, as noted, MCL 722.25(1) has long provided that in custody disputes between a child's parents, the best interests of the child control. And MCL 722.23 outlines numerous factors for a court to consider before rendering judgment to ensure that the best-interest analysis is thoughtfully and seriously undertaken. The best interests of the child might dictate limited contact with a parent and this is undoubtedly upsetting to the parent. The parent's distress, however, does not warrant imposition of additional, unrelated standards when the parent's rights remain intact.

---

[6] Defendant accuses the court of "accepting and adopting [plaintiff's] 'fear' and 'possible injury' of being American Indian" when finding proper cause to change the children's established custodial environment. Besides being confusing, this argument is a misrepresentation of the record. The court found reasonable plaintiff's fear that defendant would flee with the children to federally managed land in the Upper Peninsula where she had purchased property. This fear was based on defendant's past decision to secretly take the children to Florida in violation of court order and her recent purchase of a home on tribal land far from the children's residence. Neither the court nor plaintiff based their concern on defendant's Native American heritage.

We now turn to defendant's challenges to the court's findings under the best interest factors of MCL 722.23 and to the ultimate custody and parenting time award.

> "All custody orders must be affirmed on appeal unless the circuit court's findings were against the great weight of the evidence, the circuit court committed a palpable abuse of discretion, or the circuit court made a clear legal error on a major issue." MCL 722.28; *Pierron v Pierron*, 282 Mich App 222, 242; 765 NW2d 345 (2009), aff'd 486 Mich 81; 782 NW2d 480 (2010).

> The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009) (quotation marks and citations omitted). [*Lieberman v Orr*, 319 Mich App 68, 76-77; 900 NW2d 130 (2017).]

"In the context of a child custody dispute, an abuse of discretion is found only in extreme cases wherein the trial court's decision is so palpably and grossly violative of fact and logic that it evidences the exercise of passion or bias or a perversity of will." *McRoberts v Ferguson*, 322 Mich App 125, 133-134; 910 NW2d 721 (2017).

The circuit court correctly determined that the children had an established custodial environment with their father, and not with their mother, as they had been living exclusively with their father for an extended period. Changing that established custodial environment would require clear and convincing evidence that the change was in the children's best interests. See *Kubicki v Sharpe*, 306 Mich App 525, 540; 858 NW2d 57 (2014). The best-interest factors are outlined in MCL 722.23, which provides, " 'best interests of the child' means the sum total of the following factors to be considered, evaluated, and determined by the court." The circuit court in this case determined that the majority of factors weighed in plaintiff's favor, and that factor (k), addressing domestic violence, favored neither party. Defendant takes issue with the court's ruling on each factor, except the catch-all factor (*l*).

MCL 722.23(a) addresses "[t]he love, affection, and other emotional ties existing between the parties involved and the child." The circuit court observed that defendant saw the children for only a few hours per week during supervised parenting time and that the children received most of their parental love and affection from plaintiff on a daily basis. The record evidence supported that this factor favored plaintiff.

Factor (b) addresses "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." The circuit court found reasonable plaintiff's concern that defendant would abscond with the children, and that such an incident would remove the children from their current educational and religious settings. The court reasoned that defendant's past

behavior and criminal history suggested that she would make impulsive decisions in the future that may negatively affect the children's ability to maintain a stable educational and religious environment; specifically, defendant previously absconded with the children to Florida in violation of a direct court order. Again, the court's finding that this factor favored plaintiff was supported by the record.

The court also found that factor (c), "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care . . ., and other material needs," weighed in favor of plaintiff. The court observed that plaintiff provided the children with food, clothing, medical care, and all other material needs on a daily basis, which was supported by the record. The court acknowledged that defendant could receive medical care through her membership with a Native American tribe, but also observed that defendant did not have a job and received financial support from family. It is clear that plaintiff is better equipped to provide for the children's physical and material needs as determined by the lower court.

MCL 722.23(d) concerns "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." In finding in plaintiff's favor, the court noted that plaintiff had provided the children with a stable living environment for more than a year, whereas defendant had upset the children's home life by fleeing to Florida with them. The record adequately supports the court's conclusion.

The court further found that MCL 722.23(e), which addresses "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes," weighed in favor of plaintiff. Again, plaintiff had been providing the children with a permanent family structure for more than a year before the subject hearing, supporting the court's finding.

Factor (f) regards "[t]he moral fitness of the parties involved." The circuit court found that this factor favored plaintiff because he had established himself as a morally fit parent, whereas defendant had exhibited impulsive and criminal behaviors. Defendant had been convicted of fleeing and eluding in connection with a high speed police chase while her infant son was in the car. She was convicted of two counts of custodial interference for kidnapping her daughters and taking them to Florida. This evidence supported the weight the court gave to this factor.

Factor (g) concerns "[t]he mental and physical health of the parties involved." The circuit court observed that plaintiff had no physical or mental health issues, while defendant had. Defendant alluded to seeing a therapist, but could not give the court a name, and as a result, the court was not persuaded that defendant was making an effort to take care of her mental health. Requiring proof of such treatment was reasonable as defendant had a documented psychotic episode early in the proceedings. Accordingly, the court's finding that this factor weighed in plaintiff's favor was not against the great weight of the evidence.

The court found that factor (h), "[t]he home, school, and community record of the child," favored plaintiff. Plaintiff was the exclusive caregiver of the children for over a year. As such, he was the sole disciplinarian, the only parent to assist the children with their school work, and provided the children access to activities in the community. Given this record, we discern no error in the circuit court's conclusion.

Defendant argues that the circuit court erred with regard to MCL 722.23(i), which states that "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference," will be taken into account. Defendant contended that the circuit court erred because it did not state on the record whether her older daughter, CAM, expressed a preference regarding the custody decision. Defendant correctly asserts that the court was required to state on the record whether CAM was able to express a reasonable preference and whether that preference was considered by the court. *Fletcher v Fletcher*, 200 Mich App 505, 518; 504 NW2d 684 (1993), rev'd in part on other grounds 447 Mich 871 (1994). The circuit court stated that it had spoken to CAM, but did not directly state whether CAM expressed a preference or whether the court specifically considered that preference. However, by indicating that it spoke confidentially with CAM and considered her of sufficient age to express a preference, the court implied that it had considered her preference.

Defendant also argues that the circuit court erred by not considering the preference of her younger daughter, CEM. CEM was six years old at the time of the hearing, leading to a presumption that she was old enough to form a reasonable preference. See *Bowers v Bowers*, 190 Mich App 51, 55; 475 NW2d 394 (1991). The circuit court disagreed in this case, stating simply, "The Court did not consider [CEM] to be of sufficient age to express a preference." Accordingly, the court did not interview her. Measuring the maturity level of a particular child generally is within the trial court's discretion. See *Siwik v Siwik*, 89 Mich App 603, 609; 280 NW2d 610 (1979). Absent any explanation of why the circuit court deemed CEM too young to form a reasonable preference, we cannot determine whether the court acted within its discretion. This is not grounds for relief, however, given the number of best-interest factors weighing in favor of plaintiff and the strong evidence supporting the court's custody decision.

MCL 722.23(j) governs "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent . . . ." The court found that this factor favored plaintiff because he had agreed to continue fostering defendant's relationship with the children. Defendant, on the other hand, had made little effort to maintain plaintiff's relationship with the children, as evidenced by her decision to flee the jurisdiction with the children. This evidence, along with defendant's repeated unfounded accusations that defendant sexually abused the children, indicate that defendant previously attempted to forcibly sever the father-child relationship and likely would not be willing to facilitate a close relationship with plaintiff in the future. Thus, the court's findings are not against the great weight of the evidence.

Finally, defendant takes issue with the circuit court's ruling on factor (k), which concerns "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." The court found that this factor weighed in neither party's favor because it did not find defendant's accusations of domestic violence persuasive. Defendant argues that her testimony was more credible and that the evidence supported her allegations of domestic violence. Indeed, defendant supported her claim with documentation that plaintiff was convicted of "disorderly person" in connection with his domestic violence arrest. However, the court accurately described this as an isolated incident and found no ground to weigh this factor against plaintiff. This was a credibility determination with which we will not interfere.

As we discern no error in the circuit court's assessment of the various best-interest factors, and the court found those factors to overwhelmingly favor plaintiff, we have no ground to interfere with the court's ultimate custody decision.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien