*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JONATHON WARD JANSEN,

        Plaintiff-Appellee,

v

MARTHA VALERIE JANSEN,

        Defendant-Appellant.

UNPUBLISHED
November 10, 2022

No. 360379
Emmet Circuit Court
Family Division
LC No. 17-105883-DM

Before: SAWYER, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order awarding plaintiff primary physical custody of two of the parties' minor children, EJ and JJ. Defendant argues that the trial court (1) committed a clear legal error when it failed to consider or analyze the factors in MCL 722.31(4) to determine whether a change of legal residence was appropriate, (2) erred by finding that proper cause and a change of circumstances existed warranting modification of a custody order, and (3) abused its discretion by awarding custody of EJ and JJ to plaintiff upon consideration of the best-interest factors. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This appeal involves a custody dispute between plaintiff and defendant regarding two of their children. Altogether, the parties have four children: three daughters, LJ, RJ, and EJ, and one son, JJ. Plaintiff and defendant divorced in June 2018. Defendant remained in Petoskey, where the family lived before the divorce, and plaintiff moved to Plymouth. The judgment of divorce awarded the parties joint legal custody of the four children and, on a temporary basis, awarded plaintiff primary physical custody of RJ while granting defendant primary physical custody of LJ, EJ, and JJ. In November 2018, the physical custody arrangement was amended. Plaintiff was awarded primary physical custody of LJ and RJ, and defendant was awarded primary physical custody of EJ and JJ, again on a temporary basis. This custodial arrangement became permanent when a new stipulated custody order was issued in July 2019.

In July 2021, plaintiff filed a motion to change domicile, legal residence, parenting time, and custody relative to EJ and JJ, requesting that the trial court award him primary physical custody

of the two children and that the court change their legal residence from Petoskey to Plymouth. Defendant opposed this motion. During an evidentiary hearing before a referee, plaintiff introduced several exhibits, including a recorded conversation between defendant and the three daughters from July 2021. Plaintiff also provided evidence allegedly indicating that defendant failed to properly care for EJ's health, had inappropriate conversations with the children, had difficulties controlling her anger, used vulgarities and profanity in conversations with the children, and consumed an excessive amount of alcohol during parenting time. At the conclusion of the evidentiary hearing, the referee recommended that the trial court deny plaintiff's motion.

Plaintiff filed an objection to the referee's recommendation in September 2021, arguing that he was not given sufficient time to present evidence necessary to meet his burden of proof, that the referee should have found that there was a joint custodial environment, and that it was in the children's best interests to change custody. Plaintiff requested that the trial court set aside the referee's recommendation and conduct a de novo hearing to allow plaintiff to present additional evidence. Defendant challenged plaintiff's requests but did not raise any of her own objections to the referee's recommendation. The trial court conducted a de novo hearing, and plaintiff introduced additional exhibits, including more than a dozen messages between plaintiff and defendant. Plaintiff argued that the messages demonstrated that defendant relinquished her parenting time on multiple occasions and valued her own personal interests over the children. He further introduced evidence allegedly revealing defendant's anger problems. The trial court also reviewed the referee's recommendation, the evidentiary hearing transcript, and an *in camera* interview of the children conducted by the referee. The trial court granted plaintiff's motion and awarded him primary physical custody of EJ and JJ. This appeal ensued.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

In child custody disputes, under MCL 722.28, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." This Court reviews for an abuse of discretion a trial court's decision on whether to grant a motion for change of legal residence and on a ruling to modify custody. *Yachcik v Yachcik*, 319 Mich App 24, 31; 900 NW2d 113 (2017). In child custody disputes, "an abuse of discretion exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id*. (quotation marks and citations omitted). "In the child custody context, questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets, or applies the law." *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014). A "trial court's findings of fact are reviewed under the great weight of the evidence standard." *Yachcik*, 319 Mich App at 31. "This Court may not substitute [its] judgment on questions of fact unless the facts clearly preponderate in the opposite direction. But where a trial court's findings of fact may have been influenced by an incorrect view of the law, our review is not limited to clear error." *Rains v Rains*, 301 Mich App 313, 324-325; 836 NW2d 709 (2013) (quotation marks and citations omitted; alteration in original).

## B.  LEGAL RESIDENCE

Defendant argues that the trial court committed a clear legal error by failing to consider the factors in MCL 722.31(4) before changing EJ and JJ's legal residence to Plymouth.  Defendant contends that while she consented to a residence change to Plymouth in a stipulated custody order with respect to LJ and RJ, she did not agree to change the legal residence of either EJ or JJ.  Indeed, the parties agreed that the legal residence and domicile of JJ and EJ would remain in Petoskey.  Therefore, according to defendant, because the distance between Petoskey and Plymouth exceeds 100 miles, the factors in MCL 722.31(4) had to be analyzed.  Plaintiff maintains that defendant waived this argument and is also judicially estopped from raising the issue.

MCL 722.31 provides, in pertinent part, as follows:

> (1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

> (2) A parent's change of a child's legal residence is not restricted by subsection (1) if the other parent consents to, or if the court, after complying with subsection (4), permits, the residence change. . . . .

> * * *

> (4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following [five] factors, with the child as the primary focus in the court's deliberations . . . .

A waiver involves the intentional abandonment or relinquishment of a known right, and the affirmative expression of assent constitutes a waiver.  *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 716; 916 NW2d 218 (2017).  As part of his motion, plaintiff originally requested the referee to consider the factors in MCL 722.31(4) regarding a change of legal residence or domicile, but defendant took the position that it was unnecessary to address MCL 722.31(4) because neither parent was relocating—they were already in Petoskey and Plymouth.[1] The referee agreed with defendant and determined that he was not required to make findings under MCL 722.31(4) because plaintiff was a "relocated parent as opposed to a relocating parent."  The referee's theory was that through operation and by virtue of MCL 722.31(1), JJ and EJ necessarily

---

[1] That said, defendant did argue that if applicable, the factors in MCL 722.31(4) weighed against allowing EJ and JJ to move to Plymouth to be with their father.

-3-

had a legal residence in Plymouth when plaintiff filed his motion; therefore, awarding him custody of JJ and EJ would not amount to a change in their legal residence.

Plaintiff filed an objection to the referee's recommendation, but he did not contest the referee's decision that MCL 722.31(4) was not implicated in this case. Defendant filed a response to plaintiff's objection but did not challenge the referee's recommendation on the matter or otherwise raise this issue in the lower court. The trial court adopted the referee's recommendation concerning the legal residence of EJ and JJ, noting its agreement with the referee's analysis of MCL 722.31(1) and pointing out that neither party had objected to the recommendation. Under these circumstances, we conclude that defendant affirmatively waived this issue. Moreover, defendant, while recognizing the particular analysis employed by the referee and the trial court and calling it error, fails to argue or explain why it constituted error. See *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015) ("When an appellant fails to dispute the basis of a lower court's ruling, we need not even consider granting the relief being sought by the appellant."); see also *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (quotation marks and citation omitted).

Nevertheless, we also conclude that the referee and the trial court were substantively correct. The first sentence of MCL 722.31(1) provides that "[a] child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent." At the time of the commencement of the divorce action, the parties and the children were all residents of Petoskey, but there were custody proceedings and new orders issued after the divorce judgment was entered. And the last custody order in place before plaintiff filed the motion at issue was a 2019 stipulated order, at which point plaintiff was and had been residing in Plymouth. Regardless of the language in the 2019 stipulated custody order, all four children had to be treated as legal residents of Petoskey and Plymouth under the mandate in MCL 722.31(1). Accordingly, the trial court's ruling changing custody did not result in a change of JJ's and EJ's legal residence, and thus there was no need to examine the factors in MCL 722.31(4).

## C. PROPER CAUSE AND CHANGE OF CIRCUMSTANCES

Defendant argues that the trial court abused its discretion when it found that there was proper cause and a change of circumstances sufficient to warrant a modification of custody. Defendant maintains that the facts relied on by the trial court did not and could not have a significant effect on EJ's or JJ's life or well-being.

MCL 722.27(1)(c) provides that in a custody dispute, the trial court, for the best interests of the child at the center of the dispute, may "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances." The court, however, is not permitted to "modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). "These initial steps to changing custody—finding a change of circumstance or proper cause and not changing an

established custodial environment without clear and convincing evidence—are intended to erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders." *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003) (quotation marks omitted).

The first step in the analysis is to determine whether the moving party has established proper cause or a change of circumstances, applying a preponderance of the evidence standard. *Id.* at 508-509. "This Court reviews a trial court's determination regarding whether a party has demonstrated proper cause or a change of circumstances under the great weight of the evidence standard." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009). "Although the threshold consideration of whether there was proper cause or a change of circumstances might be fact-intensive, the court need not necessarily conduct an evidentiary hearing on the topic." *Id.*

In *McRoberts v Ferguson*, 322 Mich App 125, 131-132; 910 NW2d 721 (2017), this Court explained:

> Proper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken. In order to establish a change of circumstances, a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a significant effect on the child's well-being, have materially changed. To constitute a change of circumstances under MCL 722.27(1)(c), the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. [Quotation marks, citations, and alterations omitted.]

With respect to the issue of "proper cause," the criteria outlined in the statutory-best interest factors, MCL 722.23, "should be relied on by a trial court in deciding if a particular fact raised by a party is a 'proper' or 'appropriate' ground to revisit custody orders." *Vodvarka*, 259 Mich App at 512. In regard to "change of circumstances," the relevance of facts should also be "gauged by the statutory best interest factors." *Id.* at 514.

In this case, the trial court concluded that there existed both proper cause and a change of circumstances that warranted a review of the custody arrangement. The trial court specifically indicated that the following factual grounds established proper cause and a change of circumstances: (1) defendant's inattentiveness to EJ's medical and health needs, (2) defendant's relinquishment of her parenting time to pursue her personal goals, (3) defendant's inappropriate conversations with the children about her sex life, (4) defendant's unacceptable behavior involving wrestling with the children, (5) defendant's negligence in leaving a sex toy where EJ and a friend found it, and (6) defendant's inability to control her anger and interact appropriately with the children as demonstrated by a recorded conversation.

We hold that the trial court's ruling finding proper cause and a change of circumstances was not against the great weight of the evidence. The factual grounds cited by the court were supported by the record, and in combination, they have had or certainly could have a significant

effect on EJ's and JJ's lives—the facts did not clearly preponderate in the opposite direction. The factual grounds also reflected a material change of circumstances that have had or likely could have a significant effect on the well-being of the two children going beyond normal life changes—the facts did not clearly preponderate in the opposite direction. As we review defendant's individual arguments, it is important to keep in mind that we are not permitted to substitute our judgment on factual questions, even if we disagree with the trial court, unless and only unless the facts clearly preponderate in the opposite direction. *Rains*, 301 Mich App at 324-325.

First, contrary to defendant's arguments, there was record evidence that EJ was overweight, that her weight gain had a significant effect on her life, and that defendant did not take adequate steps to address EJ's weight issue. In July 2020, EJ weighed 179 pounds and stood five-foot-three, but by the time of the evidentiary hearing, EJ was 220 pounds and was five-feet six-inches tall. At the time of the trial court hearing in December 2021, EJ weighed 235 pounds. Her clothes no longer fit and were uncomfortable; she developed a rash on the insides of her legs from their rubbing together, and she became winded after walking up a flight of stairs. Although EJ stopped participating in sports and after-school activities in part because of the COVID-19 pandemic and in part because she broke her leg, defendant did not subsequently re-enroll her in these activities. EJ also experienced back pain from her weight. Defendant took her to a doctor, who prescribed orthotics for her shoes to address her back pain, but after EJ outgrew the orthotics, defendant never replaced them, and plaintiff stepped in to obtain new orthotics. In addition, even though defendant took EJ to a nutritionist, defendant made this appointment to address possible inflammation caused by EJ's diet, not because of her significant weight gain. Finally, there was evidence that plaintiff had been concerned since 2018 about EJ's weight gain, but when he raised the issue to defendant, she dismissed his concerns.

Next, contrary to defendant's arguments, the record demonstrated that defendant relinquished her parenting time to pursue her own personal goals and failed to make any attempt to make up the missed time. On more than nine occasions, defendant did not exercise her parenting time, leaving the children with plaintiff because she had conflicts with her training schedule for a triathlon, which she admitted during her testimony. As a result, instead of the order-based equal division, defendant had all four children for only two and a half weeks during the summer of 2021, while plaintiff had all four children for more than seven and a half weeks. Furthermore, defendant never followed up with plaintiff to make up those missed visitations.

Next, contrary to defendant's arguments, there was evidence that defendant discussed the parties' sex lives with the children multiple times. She told the children that she had dated a man with "erectile dysfunction," which she deemed appropriate to share with the children. And defendant left a sex toy on her bed that her children discovered.[2] Of note, at the time of the de novo hearing, EJ was only 11 years old and JJ was only 10 years old. Further, defendant testified that on more than one occasion she wrestled with the children after drinking alcohol. Finally,

---

[2] Although defendant argues that LJ discovered the sex toy, not EJ as the trial court found, the record is not clear regarding which child found the sex toy. But this is irrelevant. That LJ found the sex toy instead of EJ would not change the trial court's factual determination that defendant negligently left a sex toy on her bed.

-6-

defendant argues that a recorded conversation with her three daughters was not shocking or appalling and was instead "normal." She asserts that she was reasonably upset after the children ambushed her during this phone conversation. The recorded conversation clearly demonstrated that defendant was unable to control her anger, as revealed by her frequent swearing and yelling, and that she may have been intoxicated considering that she was slurring her words. Defendant was combative, used vulgarities, and had highly inappropriate reactions during the conversation, including making manipulative and guilt-inducing comments to persuade EJ to stay in Petoskey.

Although defendant argues that none of the factual grounds recited by the trial court involved JJ, the record suggests otherwise. Defendant voluntarily relinquished her parenting time with all four children, had inappropriate conversations with all four children, and wrestled with all four children after having imbibed alcohol. In sum, we hold that the trial court's conclusion that proper cause and a change of circumstances existed was not against the great weight of evidence.

## D. BEST-INTEREST FACTORS

Defendant argues that the trial court abused its discretion by concluding that best-interest factors (a), (b), (c), (d), (i), (j), and (*l*) weighed in favor of plaintiff relative to EJ, and that best-interest factors (b), (d), (j), and (*l*) favored plaintiff in connection with JJ. Defendant contends that plaintiff failed to prove by clear and convincing evidence that modifying the existing custody order was in EJ's and JJ's best interests.

As noted earlier, a court is not permitted to "modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). "Where no established custodial environment exists, the trial court may change custody if it finds, by a preponderance of the evidence, that the change would be in the child's best interests." *LaFleche v Ybarra*, 242 Mich App 692, 696; 619 NW2d 738 (2000). There is no dispute in this case that the clear-and-convincing-evidence standard applies.[3] In *Pierron v Pierron*, 486 Mich 81, 92-93; 782 NW2d 480 (2010), our Supreme Court discussed the next step of the analysis:

> If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests. Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case.

---

[3] The trial court found that there existed a joint established custodial environment between the parties with respect to EJ and JJ; therefore, awarding plaintiff primary physical custody of the two children would entail a change in the established custodial environment.

The statutory best-interest factors are set forth in MCL 722.23.[4] And it is ultimately an assessment of the best-interest factors that governs a trial court's decision on custody. MCL 722.23 (the best interests of a child means the sum total of the enumerated factors, which are "to be considered, evaluated, and determined by the court"). "Where the trial court has failed to analyze the issue of child custody in accord with the mandates of MCL 722.23 and make reviewable findings of fact, the proper remedy is to remand for a new child custody hearing." *Bowers v Bowers*, 190 Mich App 51, 56; 475 NW2d 394 (1991). Findings and conclusions regarding the best-interest factors "need not include consideration of every piece of evidence

---

[4] MCL 722.23 provides:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

entered and argument raised by the parties." *MacIntyre v MacIntyre*, 267 Mich App 449, 452; 705 NW2d 144 (2005). But "the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *Id.* "In reviewing the findings, this Court defers to the trial court's determination of credibility." *Berger v Berger*, 277 Mich App 700, 707; 747 NW2d 336 (2008) (quotation marks and citation omitted).

The trial court found that factors (a), (b), (c), (d), (i), (j), and (*l*) weighed in favor of plaintiff in relation to EJ, that factors (b), (d), (j), and (*l*) favored plaintiff in relation to JJ, that factor (h) favored defendant in regard to both EJ and JJ, that factors (a), (c), and (i) favored neither party relative to JJ, that factors (e), (f), and (g) favored neither party relative to EJ, and that factor (k) was not applicable.

Factor (a) requires the trial court to consider "[t]he love, affection, and other emotional ties existing between the parties involved and the child." MCL 722.23(a). The trial court concluded that this factor favored plaintiff in relation to EJ and favored neither party as to JJ in light of defendant's actions toward EJ during the recorded conversation. Specifically, the trial court referenced defendant's use of vulgarities, her combativeness with EJ, and her attempts to manipulate EJ into staying in Petoskey.

Defendant argues that the trial court erred by finding that factor (a) favored plaintiff in connection to EJ because (1) the recorded conversation referenced by the court was a onetime occurrence; (2) EJ's nervousness in speaking to defendant was not sufficient to demonstrate an erosion of EJ's ties to defendant such that a change of custody was warranted, and because (3) EJ manipulated defendant by recording a conversation that EJ knew would upset defendant. Defendant asserts that the trial court abused its discretion by focusing on a singular incident.

The trial court's determination that defendant's conduct damaged EJ's emotional ties to her was not against the great weight of the evidence. Defendant's statements made during the conversation were completely inappropriate. Defendant attempted to manipulate EJ into choosing to stay in Petoskey by making her feel bad about leaving JJ in Petoskey. Defendant also tried to manipulate the children by questioning whether plaintiff would move to California if he were fired from his job. Further, defendant cursed at the children, yelled at them multiple times, interrupted the children while they were speaking, and was extremely combative in her responses to statements the children made. In addition, as the trial court noted, the fact that EJ did not feel comfortable speaking to defendant about her desire to move demonstrated that the ties between them had eroded. Moreover, defendant admitted that she had raised her voice to the children on multiple occasions and acknowledged that she yelled at the children in the recording at issue. The trial court's findings that factor (a) favored plaintiff as to EJ and favored neither party relative to JJ were not against the great weight of the evidence.

Factor (b) involves "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). The trial court concluded that this factor favored plaintiff with respect to both EJ and JJ because defendant lacked the capacity or disposition to provide appropriate guidance for EJ and JJ. The trial court based this conclusion on a litany of evidentiary reasons that concerned the following conduct and communications by defendant, which she deemed appropriate: (1) the sharing of sex life details, (2) making remarks about a date's

erectile dysfunction, (3) raising her voice during a conversation with the children about sexuality, (4) leaving the sex toy exposed, (5) allowing the children to be in the presence of a man she was dating who became intoxicated and acted highly inappropriately, (6) physically wrestling with the children after drinking, (7) verbally abusing EJ and defendant's other daughters during the recorded conversation, (8) attempting to manipulate EJ in an effort to convince her that she did not want to move to Plymouth, and (9) commenting to LJ that she would "kick her ass."

Defendant objects to and challenges each of these enumerated reasons in regard to factor (b). The record, however, supports the trial court's determination that defendant lacked the disposition to provide the children with guidance. MCL 722.23(b). Defendant argues that the first four reasons mentioned by the trial court relate directly to sex or sexuality, which suggests that the court attempted to "substitute its judgment on these highly sensitive and personal issues for that of a parent's." Although the first four grounds did directly relate to sex or sexuality, there is no indication from the trial court's statements that it attempted to substitute its own judgment on these matters. Objectively speaking, defendant's actions can reasonably be characterized as troubling given the children's ages.

Second, contrary to defendant's arguments, the trial court's focus on her other behaviors did not constitute error because there was supporting evidence in the record and the conduct could reasonably be viewed as weighing against her for purposes of factor (b). Defendant also gave up parenting time to train for a triathlon. The record reflected that defendant never made up any of her missed parenting time, which amounted to several weeks in the summer of 2021. Finally, even though several of the facts referenced by the trial court related directly to EJ and not JJ, there was still adequate evidence to demonstrate that defendant did not have the capacity to provide appropriate guidance to JJ.

Factor (c) relates to "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). The trial court concluded that as to EJ, this factor favored plaintiff because defendant demonstrated that she neglected EJ's overall health. And with respect to JJ, the court concluded that the factor favored neither party. Although defendant argues to the contrary, the record supported the trial court's finding that defendant lacked the capacity and disposition to provide EJ with appropriate medical care relative to EJ's weight problem and related physical ailments, which defendant failed to adequately acknowledge and address. The evidence did not clearly preponderate in the opposite direction.

Factor (d) involves "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). The trial court concluded that this factor favored plaintiff because there were concerns regarding whether defendant's home was satisfactory for the same reasons expressed and outlined in relation to factor (b). We incorporate our analysis above and conclude that the trial court's ruling on factor (d) was not against the great weight of the evidence.

Factor (i) requires consideration of "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference." MCL 722.23(i). The trial court concluded that regarding EJ, this factor favored plaintiff, and with respect to JJ, the factor favored

neither party. The trial court stated that it took into consideration EJ's recorded *in camera* interview conducted by the referee, noting that the referee's opinion had made EJ's preferences known. Defendant argues that EJ's purported preference to move to Plymouth was questionable because EJ expressed to defendant in the summer of 2021 that she did not want to move to Plymouth. This claim is not supported by the trial court record. Instead, the record revealed that EJ expressed to defendant multiple times, including in a text message, during the recorded conversation, and in a letter, that she wanted to move to Plymouth.

Factor (j) requires consideration of "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The trial court concluded that this factor favored plaintiff with respect to both EJ and JJ because defendant was antagonistic toward plaintiff and had inappropriate conversations with the children. Contrary to defendant's arguments, the record supported the trial court's finding that defendant did not show a willingness and ability to facilitate and encourage a close and continuing parent-child relationship between the children and plaintiff. The trial court noted defendant's "sometimes friendly; other times, antagonistic" communications to plaintiff in their conversations about parenting time. Further, the trial court's opinion indicated that it viewed the July 2021 recorded conversation as one example of defendant's "combativeness" and how she allowed her negativity to "seep into her interactions with her children." The trial court referenced defendant's conversations with the children about plaintiff's sex life and defendant's messages to plaintiff inquiring about his BMI in response to his concerns about EJ's weight gain. These references and the court's other remarks, which were supported by the record, were sufficient to uphold the trial court's finding that defendant did not demonstrate a willingness and ability to facilitate and encourage a close and continuing parent-child relationship between the children and plaintiff.

Finally, factor (*l*) allows for evaluation of "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(*l*). The trial court concluded that this factor weighed in favor of plaintiff because the children shared a strong bond with each other. The trial court considered the desirability of keeping them together and noted that both plaintiff and defendant expressed the importance of having all four children spend time together. The trial court's findings were not against the great weight of the evidence.

In light of the fact that we have upheld the trial court's findings on each of the best-interest factors and that overall they weighed heavily in favor of plaintiff, we hold that the court did not err in determining that *clear and convincing evidence* existed to change the established custodial environment and award plaintiff primary physical custody of EJ and JJ.

We affirm. Having fully prevailed on appeal, plaintiff may tax costs under MCR 7.219.

/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Brock A. Swartzle

-11-