*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHEYENNE TANIS,

UNPUBLISHED
January 19, 2023

Plaintiff-Appellant,

v

No. 361989
Newaygo Circuit Court
LC No. 2013-051826-DS

JOHN HAROLD WIGGERS,

Defendant-Appellee.

Before: RIORDAN, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals as of right the circuit court's order denying her motion for a change in custody of the parties' minor child, NT. We affirm.

## I. BACKGROUND

In October 2013, when NT was a year old, plaintiff and defendant agreed to joint legal custody of NT, with plaintiff retaining sole physical custody and the ability to "make major decisions relating to the child without consulting with [defendant]" once defendant enlisted in the Army. The parties also agreed to regular parenting time.

In December 2020, defendant moved for modification of parenting time. He remained in the Army, had married, and lived out of state, but he wanted to be involved in NT's life and able to provide for her. Defendant stated that since 2013, plaintiff denied him opportunities to exercise parenting times with NT, and when he went to plaintiff's home, plaintiff threatened to call police. Defendant requested that parenting time be granted to allow him increased time as NT got to know defendant, and he sought the establishment of a steady, long-distance visitation schedule.

Plaintiff denied allegations that she prevented visits and responded that defendant merely failed or refused to exercise them at the designated times. Plaintiff added that defendant had not seen NT in person since she was nine months old. At the time of the hearing, NT was nine years old. Plaintiff testified that NT saw a counselor once or twice a week for anxiety caused by the prospect of parenting-time calls with defendant. Plaintiff also stated that she had not coached NT to dislike defendant, had not placed him in a negative light, nor prevented phone calls with him.

-1-

She contended that NT saw plaintiff's fiancé as her true father. Plaintiff stated that she remained neutral regarding the relationship between NT and defendant and let NT decide for herself what she wanted. Plaintiff also testified that defendant never asked about NT's doctor or counseling appointments, never made any medical or legal decisions, and had not engaged in co-parenting of NT.

Defendant replied that he tried to let plaintiff know when he would likely be unavailable for set call times. He explained that the Army did not allow him to take his cell phone along during fieldwork assignments and it controlled his schedule. He added that plaintiff would not answer his calls outside of the designated times. Defendant also stated that when he talked with NT she mostly said that she did not want to talk to him or that he was not her dad. Defendant complained that plaintiff would not tell him when NT was sick or had appointments.

A referee found that defendant and NT had no bond and that plaintiff met all of NT's needs. The referee also found that defendant's schedule did not permit any meaningful and consistent parenting time. Further, he found that "it would be detrimental to the child's well-being to mandate in person parenting time at this time." Therefore, parenting times were allowed via phone or video for up to half an hour on Saturday mornings. Plaintiff could monitor the visits but not interfere unless the conversation was inappropriate. Defendant was required to give 24 hours' notice if he could not attend because of an "unavoidable conflict."

Two months after the entry of the parenting-time order, plaintiff moved for sole legal custody of NT on the ground that changes in circumstances warranted the change because defendant failed to engage in any parenting time and failed to call during most designated parenting times despite his selection of the call schedule. She also asserted that he never participated in making any medical, legal, or other decisions regarding NT's care or custody. Defendant countered that his military schedule often prevented him from calling at his designated parenting times.

The trial court recalled that defendant made various efforts to engage in parenting time, but plaintiff prevented it. The trial court explained that

> [plaintiff] was supposed to make the child available, and Mr. Wiggers was, in my opinion, completely reasonable. Said: Hey, you know what, I understand, I haven't seen my daughter forever, he was wanting to start slow, he was willing to do phone calls, that sort of thing, and it's clear that Ms. Tanis has absolutely no interest in Mr. Wiggers being in any part of this child's life. She has no interest in hearing anything that he has to say about the issues that go with having joint/legal custody.

The trial court next determined that no change in circumstances occurred and good cause to change custody did not exist:

> [A]s much as she doesn't want him to be in the child's life, you know, he is not exactly a go-getter in terms of insisting that he gets the rights that he's entitled to, but from the pleadings, I don't see anything there that would justify taking away joint/legal custody.

Nevertheless, the trial court permitted the parties to testify regarding defendant's involvement in NT's life, particularly with parenting times and decision-making efforts regarding NT's medical, school, and other important life issues. The trial court concluded that no proper cause or change in circumstances existed to merit terminating defendant's legal custody of NT. The trial court stated:

> My take on this case is, number one, that Ms. Tanis, even though she wants the court to believe that she wants Mr. Wiggers to be involved in [NT]'s life, that she really doesn't. Her actions show that she doesn't. Mr. Wiggers says that he wants to be involved in [NT]'s life, but his actions show that he's not putting forth 100 percent effort to do that. I don't know if it's because you're really not interested and it just feels like something that you need to do out of some sort of moral obligation or if you don't want to rock the boat or what's going on, but you, Mr. Wiggers, have not put forth as much effort as you possibly could have, and I've put everything in place to give you the opportunity to try to be part of your daughter's life. Some of it you didn't follow through on. Some of it she prevented you from following through on. But here we are a year later, your daughter is a year older, and you're getting no closer to being part of your child's life.

The trial court admonished plaintiff regarding having better communication with defendant, and also admonished defendant regarding putting in the necessary effort to build a relationship with NT. The court instructed defendant to search his soul to decide if he truly wanted a relationship with NT. Because the court determined that plaintiff failed to make a threshold showing of proper cause or change in circumstances, it denied plaintiff's motion. Plaintiff now appeals.

## II. ANALYSIS

Plaintiff argues that the trial court erred by ruling that plaintiff failed to establish a proper cause or sufficient change in circumstances from the time of the previous custody order. She contends further that the trial court erred by not conducting a full evidentiary hearing on the matter. We disagree.

The governing statute regarding the standard of review that we must employ, MCL 722.28, states:

> To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.

Therefore, "absent error in the lower court proceedings, we may not substitute our judgment for that of the trial court." *McIntosh v McIntosh*, 282 Mich App 471, 478; 768 NW2d 325 (2009). Similarly, to the degree a factual finding required a determination of credibility, we defer to the trial court's superior position to make that assessment. *Shann v Shann*, 293 Mich App 302, 307; 809 NW2d 435 (2011).

A trial court's finding is against the great weight of the evidence when it is so contrary to the weight of the evidence that the result is unwarranted or plainly a miscarriage of justice. *Fletcher v Fletcher*, 447 Mich 871, 877-878; 526 NW2d 889 (1994). "The great weight of the evidence standard applies to all findings of fact." *Id*. at 879. Therefore, unless the evidence "clearly preponderates in the opposite direction," the trial court's factual findings should be affirmed. *Id*.

A trial court's discretionary rulings, including an ultimate custody decision, are reviewed for an abuse of discretion. *McIntosh*, 282 Mich App at 475. An abuse of discretion occurs when the result is "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Fletcher*, 447 Mich at 879-880 (citation omitted).

Trial courts may not hold an evidentiary hearing to consider a change in custody unless the movant first demonstrates a proper cause or change in circumstances sufficient to demonstrate that such hearing is necessary. *Vodvarka v Grasmeyer*, 259 Mich App 499, 508-509; 675 NW2d 847 (2003); MCL 722.27(1)(c). "The movant . . . has the burden of proving by a preponderance of the evidence that either proper cause or a change of circumstances exists *before* the trial court can consider whether an established custodial environment exists . . . [or] conduct a review of the best interest factors." *Id*. at 509.

Presentation of testimony regarding proper cause or a change of circumstances is not necessarily required. *Id*. at 512; MCR 3.210(C)(8). Rather, the trial court may accept facts alleged by the movant as true for its determination whether a preponderance of the evidence establishes a proper cause or change in circumstances. *Vodvarka*, 259 Mich App at 512. A showing of proper cause, "an appropriate ground for legal action to be taken," involves demonstrating the existence of "one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Id*. at 510, 511. Importantly, the appropriate ground or grounds "must be of such magnitude to have a significant effect on the child's well-being to the extent that revisiting the custody order would be proper" and "should be relevant to at least one of the twelve statutory best interest factors." *Id*. at 512. "When a movant has demonstrated such proper cause, the trial court can then engage in a reevaluation of the statutory best interest factors." *Id*.

This Court has affirmed a trial court's finding that proper cause to consider a custody change existed when a plaintiff was held in contempt of court three times, jailed for one of those, hampered efforts to facilitate visitation with the defendant, and encouraged the child to call the plaintiff's boyfriend "dad" and the defendant-father by his first name. *McRoberts v Ferguson*, 322 Mich App 125, 132; 910 NW2d 721 (2017). Proper cause existed in several ways in another case, where a court found that the plaintiff used excessive corporal punishment against his children, abused family pets, and did not maintain adequate living conditions for the children. *Brown v Brown*, 332 Mich App 1, 13-16; 955 NW2d 515 (2020). Proper cause also existed where a defendant failed to facilitate her children's communication with the plaintiff, failed to pay her share of travel expenses for parenting time, likely fabricated a story about defendant touching a child's genitals, and refused to sign a release of the children's school records as required by a previous custody order. *Mitchell v Mitchell*, 296 Mich App 513, 518-519; 823 NW2d 153 (2012).

To demonstrate a change of circumstances, the movant must "prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a significant effect on the child's well-being, have materially changed." *Vodvarka*, 259 Mich App at 513. This Court emphasized that "not just any change" suffices; rather, "the evidence must demonstrate something more than the normal life changes . . . and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child." *Id*. at 513-514. Normal life changes such as those caused by aging do not suffice as a change of circumstance warranting reexamination of custody. *Reimer v Johnson*, 311 Mich App 632, 648 n 4; 876 NW2d 279 (2015). In *McRoberts*, 322 Mich App at 132-133, this Court held that a change of circumstances sufficient to consider a change in custody existed where, following one custody order, the defendant deployed at sea for months at a time but then earned a land-based assignment in Virginia, got married, and earned a position in which he could provide full-time care for his child.

In this case, the trial court determined that the facts plaintiff alleged, even accepted as true, did not establish a proper cause or change in circumstances sufficient to merit a change of custody. The testimonies heard by the trial court did not sway its decision. Although plaintiff now criticizes the trial court's choice to voice its decision before it heard testimony, she does not argue on appeal that doing so constituted an abuse of discretion. Plaintiff also cites no law in support of her argument on appeal that the alleged facts demonstrated by a preponderance of the evidence that a change of circumstances or a proper cause to modify custody existed. Instead, plaintiff merely rehashes her allegations against defendant and asserts that the trial court came to the wrong conclusion. We will not substitute our judgment for the trial court's when reviewing its factual determinations. Without any other error alleged, therefore, we must affirm.

Further, although plaintiff fails to argue how the trial court's decision was against the great weight of the evidence, we note that it was not, particularly when reviewing the history of the case and the applicable rules regarding parents in active military duty.[1] The record establishes that plaintiff failed to demonstrate a proper cause to change custody. NT's custodial situation would remain the same after the proposed change. See *Vodvarka*, 259 Mich App at 511. Any change of legal custody would not necessarily change parenting time, the alleged source of NT's anxiety. Whether defendant remained allowed to have a say in important decisions in NT's life, therefore, would have no significant effect on NT's well-being. Further, although plaintiff places much significance on the statutory best-interest factors for custody, the only context in which they should be considered in a determination regarding proper cause is whether the alleged, underlying proper cause is relevant *to* one of those factors. Identifying factors that may favor plaintiff, therefore,

---

[1] "Active Duty" is defined by the United States Department of Defense as "Full-time duty in the active service of a Uniformed Service, including full-time training duty, annual training duty, full-time National Guard duty, and attendance, while in the active service, at a school designated as a Military Service school by law or by the Secretary concerned." Department of Defense Financial Management Regulation, *Definitions*, accessible at: https://comptroller.defense.gov/Portals/45/documents/fmr/archive/07aarch/07a_definitions_Feb99.pdf (accessed November 17, 2022).

does not necessarily demonstrate the existence of an underlying proper cause to change custody. Further, even when a child's best interests are able to be factored into a custody determination, a parent's absence as a result of active military duty may not be considered. *Griffin v Griffin*, 323 Mich App 110, 134-135; 916 NW2d 292 (2018);[2] MCL 722.27(1)(c). Considering that plaintiff's allegations in support of a custody change revolved largely around defendant's absence, those allegations cannot be considered because they were a result of defendant's active military duty. Therefore, plaintiff's allegations regarding defendant do not rise to the level required under *Vodvarka* and other precedent.

Plaintiff also did not identify a change of circumstances sufficient to warrant a change of custody. The trial court correctly concluded that the parties remained in the same situations they were at the time of the original custody order in October 2013: (1) plaintiff generally behaved in a manner that showed that she did not want defendant in NT's life; (2) communications between plaintiff and defendant were sporadic to nonexistent regarding important decisions affecting NT's life; (3) defendant remained in active military service; and (4) defendant failed to make his best possible effort to be involved in NT's life. Further, the original, October 2013 custody order indicated that plaintiff could make legal decisions without defendant's input while he was in active military duty. Therefore, plaintiff's only allegation that did not pertain to defendant's absence— that defendant failed to participate in making medical or legal decisions regarding NT—did not establish proper cause or change of circumstances because defendant remained in active military duty the entire time.

In all, plaintiff pointed to no material change that had or would almost certainly have an effect on NT that warranted a reevaluation of custody. The concern over NT's mental health because of defendant's increased interest in being involved in NT's life would not be remedied by a custody change; indeed, the trial court addressed that issue separately and specifically in various hearings regarding defendant's parenting time.

Plaintiff argues in her reply brief that a lower threshold for demonstrating a proper cause or change in circumstances could be required in this case because her requested custody change would not affect NT's established custodial environment. Although plaintiff points to *Shade v Wright*, 291 Mich App 17; 805 NW2d 1 (2010), to illustrate that a lower threshold is allowed when considering a change in parenting time, she offers no support for her assertion that this Court should consider the same in this situation with regard to custody. In *Kaeb v Kaeb*, 309 Mich App 556, 570; 873 NW2d 319 (2015), this Court explained:

> But, as the Court in *Shade* aptly noted, what constitutes proper cause or a change of circumstances under MCL 722.27(1)(c) will vary depending on the nature of the

---

[2] This Court later amended the opinion in *Griffin* to address a clerical error regarding this statement. The amendment altered the wording of the citation in question from "[t]herefore, under MCL 722.27(1)(c) only a parent's current absence from a child due to that parent's active-duty status *shall* be considered . . ." to "[t]herefore, under MCL 722.27(1)(c) only a parent's current absence from a child due to that parent's active-duty status *may not* be considered . . . ." *Griffin v Griffin*, unpublished order of the Court of Appeals, entered May 25, 2018 (Docket No. 338810).

requested amendment or modification. If the request involves a change that alters an established custodial environment, then the more stringent framework from *Vodvarka* will apply. *Shade*, 291 Mich App at 27. If, however, the request involves a change to the duration or frequency of parenting time, the less stringent standard discussed in *Shade* will apply. See *id*. at 29-31 (discussing the need for flexibility in parenting-time schedules because the child's needs will change with age and with the level of the child's involvement in activities).

Plaintiff has failed to establish why and how this case warrants applying the less stringent standard. "An appellant may not merely announce h[er] position and leave it to this Court to discover and rationalize the basis for h[er] claims, nor may [s]he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998), citing *Goolsby v Detroit*, 419 Mich 651, 655 n 1; 358 NW2d 856 (1984). "An appellant's failure to properly address the merits of h[er] assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

We hold that the trial court's findings were not contrary to the weight of the evidence and its decision did not constitute a miscarriage of justice. The evidence supported its decision. Because no proper cause or change of circumstances existed, the trial court did not abuse its discretion by not changing legal custody, nor did it err by not holding a full evidentiary hearing regarding plaintiff's request for a change of custody.

Affirmed.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ James Robert Redford