*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

MICHELLE MCBRIDE, also known as MICHELLE LARSEN,

Plaintiff-Appellant,

v

STEVEN MICHAEL MATHEWS,

Defendant-Appellee.

UNPUBLISHED
March 2, 2023

No. 361317
Kalamazoo Circuit Court
LC No. 2016-006747-DP

---

Before: GLEICHER, C.J., and MARKEY and RICK, JJ.

PER CURIAM.

Plaintiff Michelle McBride (mother) appeals by right the trial court's order denying her amended motion to modify custody of the parties' minor child, ALM, and finding her in contempt of court for failure to abide by a prior order. We affirm in part and reverse in part.

## I. BACKGROUND

In 2009, mother filed a paternity suit against defendant Steven Michael Mathews alleging that Mathews is ALM's father. The trial court entered a judgment of filiation, identifying Mathews as the child's father. Mother was awarded sole physical custody of ALM. In January 2016, the parties stipulated to joint physical custody. Shortly thereafter, father sought sole physical custody, contending that mother had effectively abandoned ALM to his care. The trial court granted this motion and awarded mother reasonable parenting time.

Five years later, in March 2021, mother moved for primary physical custody of the child. She argued that ALM was performing poorly in school while in father's custody, that father was not providing the child with proper clothing, eyeglasses or medical care, and that father negligently supervised the child's hygiene. Father denied these allegations.

Before a hearing on this motion, mother moved for an ex parte order modifying custody. She alleged that father's wife had physically abused ALM by spanking the child in a manner that left an injury, and amended her motion to modify custody to add this allegation of abuse. The trial court did not award mother temporary custody, but it did order that father's wife was not allowed

unsupervised contact with ALM. At a subsequent hearing the court determined that because Child Protective Services (CPS) had not substantiated abuse and had put a "safety plan" in place, supervision was no longer necessary. Mother had kept ALM in her custody beyond her allotted parenting time while the CPS investigation was conducted. The court ordered mother to return ALM to father as soon as possible,

Mother attempted to return ALM, but ALM refused to get out of the car. The Lansing police were called to the scene and declined to force ALM from the car. Father brought a motion to show cause why mother should not be held in contempt for failing to return the child pursuant to the court's directive. ALM returned to father's care four days later after the trial court entered an order specifically requiring mother to compel the child to do so.

In September and December 2021, a domestic relations referee held a two-day hearing on mother's motion to modify custody. The referee heard testimony from both parties and mother's husband. Mother testified that ALM had been performing poorly in school and that her grades only improved when mother became involved. Conversely, father insisted that he actively monitored ALM's schoolwork and that the child was doing well in school. The evidence presented to the referee revealed that ALM had mostly As and Bs at the end of the spring 2021 semester and at the time of the December 2021 hearing. Mother also testified that ALM practiced poor hygiene while in father's custody and that father did not provide a proper winter coat for the child. Father denied these allegations, stating that he had provided an acceptable winter coat for ALM and had not noticed any hygiene issues.

Mother further asserted that father did not provide proper medical care for the child. She claimed that father failed to obtain suitable eyeglasses for ALM and did not secure adequate medical care for ALM's migraine headaches, possible asthma, and allergies. Father denied these allegations as well and testified that ALM had received a medical checkup in December 2021.

Regarding the claim of physical abuse, mother testified that ALM was seriously injured and traumatized by the spanking she received from father's wife. Father acknowledged that his wife had spanked ALM when disciplining her for misbehaving, but he denied that it constituted abuse or resulted in injury. The referee determined that proper cause to revisit the custody issue was shown, but found that it was not in ALM's best interests to change the established custodial environment by modifying the custody arrangement.

Mother objected to the referee's recommendation, and the trial court conducted a de novo review.[1] The trial court ruled that mother had failed to establish proper cause or a change of

---

[1] The trial court reviewed a videotape of the referee hearing for purposes of making its ruling. The parties informed the court that they had no additional live testimony or documentary evidence to present.

circumstances as necessary to reexamine an existing custody order.[2] The trial court found that mother's testimony about ALM's trauma stemming from the spanking, which involved the child being "spanked five times on the bottom," was not credible and that mother was fabricating or embellishing in an effort to enhance her claim for custody. The trial court noted that CPS investigated, "did not substantiate abuse or neglect," and closed the case. The court also pointed out that without seeking consultation or engaging in communication with father in violation of the joint legal custody order, mother sought medical and psychological care for ALM related to the spanking and for an ankle injury suffered while in mother's care.

The trial court also determined that mother failed to establish that ALM was performing poorly in school, noting that she was "an excellent student" and that father "aptly monitor[ed] her schooling and education." The court further found that mother failed to demonstrate that the child did not practice proper hygiene while in father's care. The trial court observed that there was no evidence that ALM was "stinky and unclean at school," with the court ostensibly crediting father's testimony that the child regularly bathed. The court additionally determined that there was no evidence that ALM was improperly clothed, and ruled that father had supplied the child with an appropriate winter coat. The trial court also found that mother failed to provide any testimony from a doctor or optician showing that father was not properly caring for or monitoring ALM's medical needs. The court noted that father brought up concerns regarding the child's migraines with ALM's doctor and that father was following the doctor's suggestions. Even though the trial court found that mother failed to demonstrate proper cause or a change of circumstances, the court proceeded to analyze the statutory best-interest factors, concluding that it was not in ALM's best interests to award mother custody. The court also granted father's motion to show cause, holding mother in contempt of court for "intentionally and repeatedly" violating the "order regarding joint legal custody and . . . parenting time." Mother appeals by right.

---

[2] Again, the referee found that proper cause *had* been established. At the de novo hearing, where the parties simply presented arguments, father's attorney asked the trial court to "uphold" the referee's "decision on all matters." But the trial court then stated:

> And, you know, when this is de novo in front of me, don't expect I'm gonna rule . . . if something was in your client's favor, don't expect I'm gonna rule the same as the referee cause . . . I'm pretty thorough and look at these things, and . . . I have to determine who to believe and those kind of things, and so I may see the case different than the referee.

Under MCR 3.215(F)(2)(b), a "court may, in its discretion, . . . determine that the referee's finding was conclusive as to a fact to which no objection was filed[.]" We thus conclude that the trial court had the discretion to render a de novo decision on proper cause or change of circumstances even though the referee's finding on the matter was not the subject of an objection and despite father's expressed satisfaction with all facets of the referee's recommendation.

## II. CUSTODY

Mother first argues that the trial court's ruling regarding proper cause and a change of circumstances was against the great weight of the evidence.[3] "This Court reviews a trial court's determination regarding whether a party has demonstrated proper cause or a change of circumstances under the great weight of the evidence standard." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009). MCL 722.27(1)(c) provides that in a custody dispute, the trial court may "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances" to serve the best interests of a child. But the court is not permitted to "modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). "These initial steps to changing custody—finding a change of circumstance or proper cause and not changing an established custodial environment without clear and convincing evidence—are intended to erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders." *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003) (quotation marks omitted). The first step in the analysis is to determine whether the moving party has established proper cause or a change of circumstances, applying a preponderance of the evidence standard. *Id.* at 508-509.

In *McRoberts v Ferguson*, 322 Mich App 125, 131-132; 910 NW2d 721 (2017), this Court explained:

> Proper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken. In order to establish a change of circumstances, a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a

---

[3] In child custody disputes, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. We review for an abuse of discretion a trial court's ruling on a motion to modify custody. *Yachcik v Yachcik*, 319 Mich App 24, 31; 900 NW2d 113 (2017). In child custody disputes, "an abuse of discretion exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id.* (quotation marks and citations omitted). "In the child custody context, questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets, or applies the law." *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014). A "trial court's findings of fact are reviewed under the great weight of the evidence standard." *Yachcik*, 319 Mich App at 31. "This Court may not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction. But where a trial court's findings of fact may have been influenced by an incorrect view of the law, our review is not limited to clear error." *Rains v Rains*, 301 Mich App 313, 324-325; 836 NW2d 709 (2013) (cleaned up).

significant effect on the child's well-being, have materially changed. To constitute a change of circumstances under MCL 722.27(1)(c), the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. [Cleaned up.]

The criteria outlined in the statutory-best interest factors, MCL 722.23, "should be relied on by a trial court in deciding if a particular fact raised by a party is a 'proper' or 'appropriate' ground to revisit custody orders." *Vodvarka*, 259 Mich App at 512. As to "change of circumstances," factual relevance should also be "gauged by the statutory best interest factors." *Id*. at 514.

Mother argues that the trial court's determinations regarding ALM's school performance and medical care were against the great weight of the evidence. Mother contends that these two matters alone established proper cause to revisit the existing custody order.

The evidence regarding ALM's school performance barely conflicted and ultimately demonstrated that the child performed well in school. Father testified that ALM's current grades at the December 2021 hearing were all As and Bs. The evidence of ALM's grades at the end of the 2020-2021 school year revealed similar solid grades.[4] Mother maintains that those grades reflected her efforts, and that ALM had performed poorly when in father's care. But scant evidence supported these claims. Conversely, father testified that he monitored ALM's schoolwork. The trial court found his testimony credible, as indicated by its observation that father "aptly monitor[ed] [ALM's] schooling and education." The trial court concluded that given the child's excellent grades, school performance did not provide proper cause to revisit the custody order. This finding was not against the great weight of the evidence. Mother failed to establish that ALM was performing poorly in school, let alone that this purported poor performance could be properly attributed to father.

Mother argues that lapses in father's medical care of ALM represented proper cause to revisit the custody order. Mother contends that father did not provide her any information regarding ALM's medical care and, therefore, mother had no way to know whether ALM's medical needs were being met, had no opportunity to consent to ALM's medical treatment, and had no ability to participate in ALM's medical care.[5]

---

[4] During the referee hearing in September 2021, which of course would have been at the beginning of the school semester, mother testified that "currently [ALM] has multiple F's and she has two missing assignments." Mother relies on this testimony on appeal, but we conclude that little weight can be given to this early and brief snapshot in time, especially considering the child's final semester grades in June and December 2021.

[5] Mother notes that the trial court commented in its opinion that both parties were not the most dependable when it came to abiding by the joint legal custody order, co-parenting, and communicating with each other. Thus, according to mother, the court found that she was somewhat credible when it came to her assertions that father withheld information from her and did not fully communicate with respect to the child's medical care. We note, however, that the

The evidence regarding the information father shared with mother relative to ALM's medical care consisted solely of the parties' testimony. Mother testified that father refused to communicate with her regarding ALM's medical care, while father testified that he did in fact communicate with mother on that issue. Neither party spent much time discussing this issue before the referee; rather, the focus was on mother's contention that father failed to provide for ALM's medical care and treatment. The trial court determined that mother failed to introduce evidence showing that father deprived ALM of proper medical care and treatment. We conclude that mother has not demonstrated that the trial court's finding was against the great weight of the evidence.

In sum, the trial court's finding that mother failed to establish proper cause or a change of circumstances sufficient to warrant consideration of a custody modification was not against the great weight of the evidence. Accordingly, we affirm the trial court's ruling denying mother's amended motion to modify the existing custody arrangement.[6]

## III. CONTEMPT

Mother next argues that the trial court erred when it granted father's motion to show cause and held her in contempt of court. A trial court's findings in relation to a contempt determination are reviewed for clear error and must be affirmed if there is competent evidence to support the findings. *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009) (citations omitted). Clear error exists when the appellate court is left with the firm and definite conviction that a mistake was made. *Id*. at 669. The ultimate decision to issue a contempt order rests in the sound discretion of the trial court, which we review for an abuse of discretion. *Id*. at 671.

The evidence established that father's wife spanked 12-year-old ALM, and that the child claimed to be in pain several hours later. Unremarkably, the child later expressed that she did not want to return to her father's home. When mother was ordered to return the child to father, the child resisted and, according to mother, cried hysterically.

The trial court found mother in contempt based on mother's failure to more forcefully compel her daughter to return to her father's home. However, the evidence supports that mother did not deliberately "withhold" the child in disregard of the court's order out of spite, but to protect ALM physically and emotionally. Although the trial court disbelieved mother's claim that ALM

---

trial court made the general observation about the parties' shortcomings in regard to co-parenting, communications, and the joint legal custody order when analyzing the best-interest factor specific to the parties' willingness to facilitate and encourage a close and continuing parent-child relationship between ALM and the other parent. See MCL 722.23(j). The trial court made no determination or finding that father failed to share medical information with mother. Indeed, the court found that it was mother who failed in this regard.

[6] Mother also argues that the trial court erred when it determined that modifying custody was not in ALM's best interests. Because mother failed to establish that the trial court erred when it determined that mother had not satisfied the threshold question of the existence of proper cause or a change of circumstances, we need not address whether the trial court erred when it determined that a modification of custody was not in ALM's best interests.

*refused* to return to her father's home, the great weight of the evidence contradicts this finding. ALM was interviewed by the referee and expressed a preference for residing with her mother. Although no additional information about the interview is in the record, the fact that father's wife spanked a 12-year-old and that ALM preferred to live with her mother supports mother's testimony that ALM was not willing to voluntarily return to her father's home despite the court's order, and substantiates mother's testimony that ALM strenuously resisted even when told she had to do so.

The evidence additionally supports that mother found herself in an emotionally fraught situation, forced to choose between compelling her unwilling 12-year-old daughter to a place where she had been physically punished, and allowing the child to remain in a place where she felt safe. Under the circumstances, we are left with the firm and definite conviction that the trial court erred by finding mother's failure to physically eject her unwilling daughter from the car to be contemptuous, despite the presence of a court order.

We affirm in part and reverse in part, and remand for proceedings consistent with this opinion. We do not retain jurisdiction. No costs may be taxed as neither party having prevailed in full.

/s/ Elizabeth L. Gleicher
/s/ Michelle M. Rick